178 P.3d 366 (2008)
STATE of Washington, Respondent,
v.
David Leon ENLOW, Appellant.
In the Matter of the Application for Relief from Personal Restraint of: David Leon Enlow, Petitioner.
Nos. 24396-6-III, 24842-9-III, 25159-4-III.
Court of Appeals of Washington, Division 3.
March 6, 2008.
*367 David L. Donnan, Maureen M. Cyr, Nancy P. Collins, Seattle, for Appellant.
Andrew K. Miller, Benton County Prosecutor's Office, Kennewick, for Respondent.
KULIK, J.
¶ 1 David Enlow appeals his conviction for manufacture of methamphetamine. In a consolidated appeal, he also contends the trial court erred by denying his request for a writ of mandamus to order the Benton County Jail to provide library access to him to dispute charges pending in other jurisdictions.
¶ 2 Police found Mr. Enlow hiding in the bed of a truck which contained numerous items, including some items used to make methamphetamine. We reverse Mr. Enlow's conviction for manufacture of methamphetamine because we conclude that Mr. Enlow was not in direct or constructive possession of the truck. We also conclude that Mr. Enlow's appeal of the denial of the writ of mandamus is moot.

FACTS
¶ 3 Officers approached 207 Quince Place, Kennewick, Washington, to execute a warrant to search for stolen property. An officer noticed an overwhelming smell of ammonia coming from a truck. The truck was registered to Raymond Eugene Gratreak of Prineville, Oregon. Officers obtained an amendment to the warrant allowing them to search the truck.
¶ 4 When the officers began searching the truck, they discovered Mr. Enlow hiding under a blanket in the canopy part of the truck. Mr. Enlow told the officers that the truck did not belong to him and that he was only hiding there. A search of the truck revealed methamphetamine and the materials to make methamphetamine.
¶ 5 Mr. Enlow did not own or live in the house at 207 Quince Place. He was not the owner of the truck. During the search, officers found identification cards bearing Mr. Enlow's name. They also found another man's odometer disclosure form. Officers found property with Mr. Enlow's fingerprints on it, but these fingerprints were not on items containing methamphetamine or on items used to manufacture it.
¶ 6 At the end of a stipulated facts bench trial, Mr. Enlow was convicted of one count of manufacturing methamphetamine. The court imposed a sentence of 100 months' incarceration. He appeals.

ANALYSIS
¶ 7 Sufficiency of the Evidence. Mr. Enlow contends the evidence is insufficient to support his conviction for manufacturing methamphetamine. Under RCW 69.50.401(1), "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture [methamphetamine]."
¶ 8 When considering a sufficiency of the evidence claim, this court views the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found all of the essential elements *368 of the offense beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The State's evidence is presumed to be true, as are all inferences reasonably drawn from this evidence. State v. Theroff, 25 Wash.App. 590, 593, 608 P.2d 1254, aff'd, 95 Wash.2d 385, 622 P.2d 1240 (1980).
¶ 9 This case was tried to the court without a jury so we must engage in a three-part inquiry. First, we must determine whether the evidence supports the findings of fact. Second, we must determine whether the findings of fact support the conclusions of law. And third, we must decide whether the conclusions of law support the judgment. State v. Macon, 128 Wash.2d 784, 799, 911 P.2d 1004 (1996).
¶ 10 The controversy here arises out of the application of the second question. Mr. Enlow does not challenge the findings of fact entered by the court. Unchallenged findings are verities on appeal. State v. Halstien, 122 Wash.2d 109, 128, 857 P.2d 270 (1993). Simply put, we must determine whether the findings of fact support the conclusions of law.
¶ 11 When the officers began searching the truck, they found Mr. Enlow hiding under a blanket in the canopy section. Mr. Enlow told Detective Rick Runge that he was just hiding there and that he did not own the truck. Mr. Enlow also did not live at 207 Quince Place. During the search, deputies found Mr. Enlow's Washington State identification card in the canopy portion of the truck, and Mr. Enlow's Washington State inmate identification card in the pocket of a shirt in the truck's cab. Deputies also found a Washington State odometer disclosure form for "Nick Tobal." Clerk's Papers (CP) at 17. The truck was licensed in Oregon and registered to Raymond Gratreak, the legal owner.
¶ 12 Mr. Enlow's fingerprints were found on a one pint jar with residue which was untested, a quart jar, and a Thousand Island salad dressing bottle, all of which had no contents listed. These items were found in the bed of the truck. Walter Mettling, who owned the residence at 207 Quince Place, asked a detective what should be done with "`David's' pickup." CP at 18. Numerous other items were found in the truck but the court did not find that they contained Mr. Enlow's fingerprints. The court found that: "[Mr. Enlow] had knowledge that methamphetamine is a controlled substance." CP at 21.
¶ 13 These findings do not support the court's conclusion that: "[Mr. Enlow] is guilty of the crime of Manufacture of a Controlled Substance, Methamphetamine, committed on or about the 10th Day of March, 2005." CP at 22. There is no direct evidence showing that Mr. Enlow was the person who manufactured methamphetamine in the truck. Thus, the State argues that Mr. Enlow had constructive possession of the truck and the items inside the truck. However, the trial court did not make a finding that Mr. Enlow owned or constructively possessed the truck.
¶ 14 Constructive possession is the exercise of dominion and control over an item. State v. Callahan, 77 Wash.2d 27, 29-30, 459 P.2d 400 (1969). Constructive possession is established by viewing the totality of the circumstances, including the proximity of the property and ownership of the premises where the contraband was found. State v. Turner, 103 Wash.App. 515, 522-23, 13 P.3d 234 (2000). The totality of the circumstances must provide substantial evidence for a fact finder to reasonably infer that the defendant had dominion and control. State v. Cote, 123 Wash.App. 546, 549, 96 P.3d 410 (2004).
¶ 15 Ownership of the truck is one factor to consider when assessing constructive possession. See Turner, 103 Wash.App. at 521-24, 13 P.3d 234. Exclusive control of the truck is not necessary to establish constructive possession but mere proximity alone is not enough to infer constructive possession. Cote, 123 Wash.App. at 549, 96 P.3d 410. Here, Mr. Enlow did not own the truck and he did not own or rent the residence at 207 Quince Place.
¶ 16 In Callahan, Mr. Callahan did not own the houseboat he was on, but he was observed in close proximity to the drugs and *369 he admitted handling the drugs earlier that day. Callahan, 77 Wash.2d at 28-31, 459 P.2d 400. Mr. Callahan had been on the houseboat for two or three days and he had with him two books, two guns, and a set of broken scales. Id. at 31, 459 P.2d 400. The court found insufficient evidence to find Mr. Callahan in constructive possession of the illegal drugs. Id.
¶ 17 In State v. Spruell, 57 Wash.App. 383, 384, 788 P.2d 21 (1990), police observed Luther Hill stand up from a table which was holding drugs and drug paraphernalia. The court refused to find constructive possession even though Mr. Hill's fingerprints were on a plate containing cocaine residue. Id. at 388-89, 788 P.2d 21. Similarly, in Cote, the court found the evidence insufficient to establish dominion and control where a passenger in a vehicle left fingerprints on a jar containing contraband. Cote, 123 Wash.App. at 550, 96 P.3d 410.
¶ 18 Fingerprint evidence alone is sufficient to support a conviction if the trier of fact could reasonably infer that fingerprints could have been made only at the time when the crime was committed. State v. Lucca, 56 Wash.App. 597, 599, 784 P.2d 572 (1990). Significantly, here, the trial court did not find Mr. Enlow's fingerprints on numerous items containing methamphetamine.
¶ 19 The court's findings do not support the court's conclusion that Mr. Enlow is guilty of the manufacture of methamphetamine. Because the evidence is insufficient to convict Mr. Enlow, his conviction must be reversed and we need not address his remaining assignments of error related to this appeal.
¶ 20 Writ of Mandamus. While Mr. Enlow was held in the Benton County Jail pending trial on the manufacturing methamphetamine charge, he was also held on warrants issued on charges filed in Lewis County, Washington, and in Gilliam County, Oregon. Mr. Enlow's Benton County counsel would not represent him in the criminal matters pending in other jurisdictions. The Benton County Jail did not have a law library available for inmate use.
¶ 21 Mr. Enlow filed a writ of mandamus asking the Benton County Superior Court to issue a mandate ordering the county to provide him with access to a law library, to legal research materials, or to a person trained in the law, who could assist him with his pro se defense with regard to the charges filed in other jurisdictions. The court denied Mr. Enlow's request. On appeal, Mr. Enlow contends the court erred by concluding that Benton County had no obligation to assist him in accessing legal materials related to charges filed in other jurisdictions.
¶ 22 An appeal must be dismissed if the questions are moot or abstract, or where the substantial questions considered at the trial level are no longer at issue. Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972). A case is moot when, "a court can no longer provide effective relief." Orwick v. City of Seattle, 103 Wash.2d 249, 253, 692 P.2d 793 (1984).
¶ 23 This appeal is moot. Mr. Enlow is no longer in the Benton County Jail, and his conviction has been reversed.
¶ 24 We reverse the conviction and determine that the appeal of the denial of the writ of mandamus is moot.
WE CONCUR: SCHULTHEIS, A.C.J.
BROWN, J. (dissenting).
¶ 25 I disagree that the evidence was insufficient for conviction. Under State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980), we must view the evidence most favorably for the State.
¶ 26 The unchallenged findings show a pickup was parked at a Benton County residence being lawfully searched by Benton County officers. Officers detected an "overwhelming smell of ammonia" coming from the truck. Clerk's Papers (CP) at 15. One officer saw numerous, plainly visible items on the cab's floorboard described as "indicators of the manufacture of narcotics." Id. David Enlow's "State Inmate identification card was located in the pocket of a shirt in the pickup's cab." CP at 16. Officers "located [Mr. Enlow] hiding under a blanket in the canopy portion of the pickup truck." Id. He was lying on top of property identified as *370 components of a methamphetamine manufacturing lab. "Officers located [Mr. Enlow's] Washington State identification card under various items of property in the canopy portion of the pickup truck." Id. Mr. Enlow told a detective "that the truck did not belong to him and that he had just hid in it." Id.
¶ 27 The residence owner asked a detective, "what he should do with `David's' pickup" while "pointing to the pickup truck." CP at 18. Mr. Enlow's fingerprints were on certain manufacturing items found in the truck bed, a one pint jar with untested residue, one quart jar, and a salad dressing jar. Other jars and containers containing residue or powder tested positive for methamphetamine. Numerous items listed in findings of fact 14 and 18 showed a methamphetamine manufacturing lab and the items showing methamphetamine. "From the analysis of most of the items submitted," the court concluded "that most of the analyzed items were involved in, associated with, or made available for the manufacturing of methamphetamine by the liquefied ammonia method." CP at 21. The court found Mr. Enlow "had knowledge that methamphetamine is a controlled substance." Id.
¶ 28 Viewed for the State, the evidence shows Mr. Enlow was found hiding under a blanket in a truck canopy literally on top of and surrounded by items used to manufacture methamphetamine. Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). Mr. Enlow fled and hid when he saw the officers. Hiding and flight infer guilt. State v. Gear, 30 Wash.App. 307, 310-11, 633 P.2d 930 (1981); State v. Price, 126 Wash. App. 617, 645, 109 P.3d 27 (2005). Mr. Enlow said the truck was not his, but the residence owner asked, "what he should do with `David's' pickup" while "pointing to the pickup truck." CP at 18. A fact finder could infer the residence owner knew Mr. Enlow and infer Mr. Enlow gave the residence owner the impression he owned the truck because he had seen Mr. Enlow possessing it.
¶ 29 Mr. Enlow's fingerprints were found on three different manufacturing items in the truck bed, one contained an untested residue. This circumstantially shows he had handled the items and it could be inferred he was involved in using those items in manufacturing. A fact finder could infer the identification card was found in a shirt belonging to Mr. Enlow. Mr. Enlow was found hiding in the back of the truck where his fingerprints and another identification card were located. A fact finder could infer from this direct and circumstantial evidence that Mr. Enlow had occupied both parts of the truck for more time than Mr. Enlow admitted and that he had used the equipment for manufacturing methamphetamine.
¶ 30 Two of Mr. Enlow's identification cards were found in the truck, one was in Mr. Enlow's shirt in the cab and the other was found in the truck bed under the lab equipment. This evidence undermines Mr. Enlow's explanation that he quickly ran and hid in the truck. A fact finder could infer it was illogical to first occupy the truck cab, and then get out and move into the bed, it would take too much time. Mr. Enlow, a person who "had knowledge that methamphetamine is a controlled substance" picked a strange place to run and hide, considering the truck reeked of ammonia and he could easily see it was packed full of very obvious methamphetamine manufacturing equipment. CP at 21. Mr. Enlow did not contest the wealth of evidence showing the presence of the methamphetamine lab.
¶ 31 While Mr. Enlow gave some innocent explanations, we are bound to view the evidence most favorably for the State. On this record, I would hold the evidence was sufficient to convict him of manufacturing methamphetamine.
¶ 32 Accordingly, I respectfully dissent.