214 P.3d 181 (2009)
STATE of Washington, Respondent,
v.
Sergey Lyubomir LAKOTIY, Appellant.
No. 62157-2-I.
Court of Appeals of Washington, Division 1.
August 24, 2009.
*183 Dennis John McCurdy, Daniel Kalish, King County Prosecutor's Office, Seattle, WA, for Respondent.
Casey Grannis, Nielsen Broman & Koch, PLLC, Seattle, WA, for Appellant.
LAU, J.
¶ 1 Sergey Lakotiy challenges his conviction for possession of a stolen vehicle. He argues the trial court erred in denying his motion to suppress evidence obtained following a warrantless entry into a gated commercial storage facility common area. He also asserts the evidence is insufficient to support his conviction. The State concedes that the trial court denied the motion on an improper basis, but argues that this court may affirm on three alternative grounds: (1) the police officers' entry did not implicate Lakotiy's constitutional right to privacy, (2) the police officers had actual authority to enter, and (3) Lakotiy lacked standing to challenge the warrantless entry. Because the state and federal constitutions afford no privacy protection to the common area of a gated commercial storage facility, the trial court properly denied the suppression motion. And because sufficient evidence supports the conviction, we affirm.

*184 FACTS

¶ 2 The facts are undisputed. On the evening of November 27, 2007, Federal Way Police Officers Chris Walker and Kurt Schwan responded to a 911 call reporting suspicious activity at a multi-unit commercial storage facility. The storage facility was secured by a locked gate with a keypad on both the inside and the outside. When they arrived, Officer Schwan telephoned the storage facility manager to inform her about the 911 call and ask for an access code. The manager told Officer Schwan that she would come to the facility and allow them in.
¶ 3 Meanwhile, the officers waited outside the locked gate for the manager to arrive. After five or ten minutes, an unknown individual arrived at the facility, entered an access code, and opened the gate. Officer Walker asked the individual to return to the gate if he saw anything suspicious inside the storage facility. A few moments later, the individual returned and told the officers that he saw something suspicious involving a white van and a white car parked in the southwest corner of the facility. He then opened the gate for the officers by entering his access code. The officers drove their patrol car through the open gate and into the common area of the storage facility.
¶ 4 After parking their car, the officers walked towards the southwest corner of the facility, where they saw a white Acura and a white Ford van. They noticed light coming from the partially open sliding door of a nearby storage unit. The door was raised about 12 to 18 inches off the ground. And the officers heard the sound of tools coming from the inside of the storage unit. Officer Schwan also saw an individual inside the storage unit who was wearing blue jeans and loafers. As the officers walked toward the storage unit, the door slowly opened. The officers then announced their presence and asked the storage unit occupants to talk to them.
¶ 5 In response, an individual later identified as Lakotiy opened the door with his left hand while holding a silver-colored metal object cupped in his right hand. He quickly reached back and placed the object on the trunk of a green Acura parked inside the storage unit. When the door was completely open, the officers saw another individual, later identified as Bogdan Fedas, leaning under the hood of the green Acura.[1] The Acura's ignition, seats, and cushions were missing, and car parts, seats, and cushions lay on the ground next to it. When they looked to see what Lakotiy had placed on the trunk, they saw a car ignition and a large set of keys, which they recognized as "jiggler keys" commonly used to steal cars.[2]
¶ 6 The officers detained Lakotiy and Fedas while running a record check on the vehicles. They determined that the green Acura parked inside the storage unit and the white Acura parked outside the unit were stolen. And the white van parked outside the unit belonged to Fedas. The officers arrested Lakotiy and Fedas and sought a warrant to search the storage unit. Meanwhile, the storage facility manager arrived and gave Officer Schwan a law enforcement access code permitting entry to the gated storage facility common area at any time.
¶ 7 The State charged Lakotiy, who was 17 years old at the time of the incident, in juvenile court with one count of possession of a stolen vehicle.[3] Before trial, Lakotiy moved to suppress the evidence obtained from the warrantless search of the storage facility common area, arguing that the officers violated his constitutional rights by entering the common area without valid consent. The trial court concluded, "The warrantless search was lawful because the officer[]s reasonably relied on the 911 call and the unknown person's apparent authority to consent." Following a bench trial, *185 the court found Lakotiy guilty as charged. Lakotiy appealed.

ANALYSIS

Warrantless Entry
¶ 8 Lakotiy argues that the trial court erred in denying his motion to suppress evidence obtained without lawful authority. When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). Conclusions of law are reviewed de novo. State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002).
¶ 9 Specifically, Lakotiy contends the trial court erred in concluding that the warrantless search of the storage facility common area was lawfully based on the 911 call and the unknown individual's apparent authority to consent to the search. The State properly concedes that the trial court erred in basing its decision on apparent authority. State v. Morse, 156 Wash.2d 1, 12, 123 P.3d 832 (2005) (holding that consent based on apparent authority is not an exception to the warrant requirement under article I, section 7 of the Washington State Constitution). But the State argues that three alternative grounds support the trial court's denial of Lakotiy's suppression motion: (1) the officers' entry into the common area did not implicate Lakotiy's constitutional rights, (2) the officers had actual authority to enter, and (3) Lakotiy lacked automatic standing to challenge the warrantless entry.
¶ 10 RAP 2.5(a) provides, "A party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground." We may affirm the trial court on an alternative theory, even if not relied on below, if it is established by the pleadings and supported by proof. State v. Flowers, 57 Wash.App. 636, 640-41, 789 P.2d 333 (1990) (probable cause to arrest plus exigent circumstances supported warrantless entry); State v. Sondergaard, 86 Wash.App. 656, 657-58, 938 P.2d 351 (1997) ("we may affirm a trial court's decision on a different ground if the record is sufficiently developed to consider the ground fairly"). We conclude that the record is sufficiently developed to consider the State's alternative grounds for affirming the trial court.[4]
¶ 11 First, the State argues that the police officers' entry into the common area of the gated storage complex did not implicate Lakotiy's state or federal constitutional right to privacy. "When presented with arguments under both the state and federal constitutions, we review the state constitution arguments first." State v. Puapuaga, 164 Wash.2d 515, 521, 192 P.3d 360 (2008). "It is by now axiomatic that article I, section 7 provides greater protection to an individual's right of privacy than that guaranteed by the Fourth Amendment." State v. Parker, 139 Wash.2d 486, 493, 987 P.2d 73 (1999). "Accordingly, a Gunwall[5] analysis is unnecessary to establish that this court should undertake an independent state constitutional analysis." State v. Surge, 160 Wash.2d 65, 71, 156 P.3d 208 (2007) (footnotes omitted).
¶ 12 Article I, Section 7. Article I, section 7 of Washington's constitution provides, "No person shall be disturbed in his private affairs, ... without authority of law." "The interpretation of article, I, section 7 involves a two-part analysis." State v. Miles, 160 Wash.2d 236, 243, 156 P.3d 864 (2007).
The first step requires us to determine whether the action complained of constitutes a disturbance of one's private affairs. If there is no private affair being disturbed, the analysis ends and there is no *186 article I, section 7 violation. If, however, a private affair has been disturbed, the second step is to determine whether authority of law justifies the intrusion.
Puapuaga, 164 Wash.2d at 522, 192 P.3d 360.
¶ 13 The "private affairs" analysis "focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984). "Private affairs are not determined according to a person's subjective expectation of privacy because looking at subjective expectations will not identify privacy rights that citizens have held or privacy rights that they are entitled to hold." Surge, 160 Wash.2d at 72, 156 P.3d 208. The analysis begins with an examination of what kind of protection has historically been extended to the asserted interest. State v. McKinney, 148 Wash.2d 20, 27, 60 P.3d 46 (2002). Next, we determine "whether the expectation of privacy is one that citizens should be entitled to hold." Andersen v. King County, 158 Wash.2d 1, 44, 138 P.3d 963 (2006).
¶ 14 Here, the private affairs inquiry focuses on Lakotiy's asserted privacy interest in the common area of a gated commercial storage facility, not the storage unit itself.[6] There are no historical protections provided to the common area of commercial storage facilities. Rather, State v. Bobic, 140 Wash.2d 250, 996 P.2d 610 (2000) supports the conclusion that commercial storage units do not fall within the constitutional protection of private affairs.
¶ 15 In Bobic, the manager of a commercial storage facility informed police that one of the units might be connected with stolen vehicles. A detective obtained permission from the manager to enter an unrented, unlocked commercial storage unit adjacent to the suspicious unit. From there, he was able to peer into the adjacent unit through a small hole. Based on what he saw, he obtained a search warrant for the adjacent unit and recovered stolen goods. Bobic, 140 Wash.2d at 254-55, 996 P.2d 610. The trial court concluded that the detective conducted a warrantless search when he looked through the hole in the wall, but it denied the defendant's motion to suppress based on lack of standing. Bobic, 140 Wash.2d at 255-56, 996 P.2d 610.
¶ 16 The Washington Supreme Court held that the detective's observations did not constitute a search because the detective was lawfully inside the adjoining unit and the objects were in open view. Bobic, 140 Wash.2d at 259, 996 P.2d 610. The court then expressly rejected the defendant's argument that the search was nonetheless unlawful because it invaded a protected privacy interest.
Moreover, a commercial storage unit is not the kind of location entitled to special privacy protection. For example, a person's home is entitled to "heightened constitutional protection" relative to other locations. State v. Young, 123 Wash.2d 173, 185, 867 P.2d 593 (1994). See also City of Tukwila v. Nalder, 53 Wash.App. 746, 770 P.2d 670 (1989) (finding search of a toilet stall offensive because society recognizes a reasonable expectation of privacy in those bodily functions which take place in a bathroom stall). We decline to determine that a commercial storage unit has any special protected status.

Bobic, 140 Wash.2d at 259-260, 996 P.2d 610 (emphasis added) (footnote omitted). In a footnote, the court continued,
Indeed, Bobic had a minimal privacy interest in the storage unit. The unit was, in fact, rented by Almaz Sebesebie, not Bobic. Furthermore, he was not an authorized entrant into the unit. Thus, if anyone's private affairs were intruded upon by the detective, it would be Almaz Sebesebie's private affairs, not Bobic's. Moreover, under the lease agreement, the landlord had nearly unfettered discretion to enter the unit to remove and dispose of property improperly placed there. It is difficult to see a privacy interest for Bobic, *187 given the number of people who had the right to enter the unit at their discretion.
Bobic, 140 Wash.2d at 259 n. 4, 996 P.2d 610.
¶ 17 Given that the Washington Supreme Court declined to extend special protected status to a commercial storage unit, it follows that no privacy protection is accorded to the common area of a commercial storage facility. This is particularly true where, like the defendant in Bobic, Lakotiy was not the individual who rented the storage unit.
¶ 18 Lakotiy points to the court's statement that "Bobic had a minimal privacy interest in the storage unit." Bobic, 140 Wash.2d at 259 n. 4, 996 P.2d 610. He argues that this interest is entitled to protection because the Bobic court upheld the storage unit search under the open view doctrine rather than on a privacy interest ground. This argument is unpersuasive because Lakotiy takes this quote out of context and misreads Bobic. After holding that the detective's observations did not constitute a search because the objects were in open view, the court directly addressed and rejected Bobic's argument that the detective invaded a protected privacy interest when he peered into the storage unit.
¶ 19 Lakotiy also asserts that Bobic is distinguishable because in that case, the police had permission to enter the adjacent storage unit, whereas here, the police entered a gated commercial storage facility without valid consent or a warrant. But in the absence of a privacy interest, neither a warrant nor consent is required by police officers to enter the storage facility common area.
¶ 20 Concluding that Bobic provides no historical support for a protected privacy interest in commercial storage facility common areas, we next consider whether the expectation of privacy is one that a citizen of this state is entitled to hold. "This part of the inquiry includes a look into the nature and extent of the information that may be obtained as a result of the governmental conduct and the extent to which the information has been voluntarily exposed to the public." Puapuaga, 164 Wash.2d at 522, 192 P.3d 360.
¶ 21 Lakotiy argues that citizens should be entitled to hold an expectation of privacy in commercial storage facility common areas. He relies on cases finding that "private affairs" were implicated where the search potentially reveals personal information. State v. Jorden, 160 Wash.2d 121 129-30, 156 P.3d 893 (2007) (random and suspicionless search of hotel registry); State v. Miles, 160 Wash.2d 236, 246-47, 156 P.3d 864 (2007) (banking records); State v. Jackson, 150 Wash.2d 251, 262, 76 P.3d 217 (2003) (GPS device attached to vehicle); State v. Young, 123 Wash.2d 173, 183-84, 867 P.2d 593 (1994) (infrared surveillance of home). But these cases are distinguishable. Here, information obtained by officers upon entry into a commercial storage facility common area does not reveal intimate or discrete details of an individual's life. The contents of the individual storage units are ordinarily hidden from view, except when items are moved in or out of the unit. And although the locked gate excludes the general public, the storage unit exterior and common area can be readily seen by other storage unit renters.[7] In addition, anyone with the storage unit renter's permission and access code can open the gate and enter the common area of the storage facility.
¶ 22 Lakotiy also relies on City of Seattle v. McCready, 123 Wash.2d 260, 271, 868 P.2d 134 (1994). There, the court held that tenants of a residential apartment complex had common authority to consent to a search of the common areas in their own right. He argues that if common areas of apartment buildings did not implicate private affairs, *188 then there would be no need to give consent. However, while McCready apparently assumed that the search implicated a private affair, it did not directly address the issue. Importantly, unlike a commercial storage facility, an apartment is a dwelling place that courts have held is entitled to heightened protection.
¶ 23 Fourth Amendment. The State also argues that Lakotiy had no federal constitutionally protected interest in the common area of the storage facility. "The Fourth Amendment to the federal constitution also provides protection against warrantless searches and seizures." State v. Carter, 151 Wash.2d 118, 127, 85 P.3d 887 (2004). "[A] search occurs under the Fourth Amendment if the government intrudes upon a reasonable expectation of privacy." Bobic, 140 Wash.2d at 258, 996 P.2d 610. "A subjective expectation of privacy is unlikely to be found where the person asserting the right does not solely control the area or thing being searched." Carter, 151 Wash.2d at 127, 85 P.3d 887.
¶ 24 Lakotiy responds that his claim is based on article I, section 7, not on the Fourth Amendment.[8] But "while the structural differences in federal and state constitutions mean[] the federal analysis is not binding upon our state constitutional analysis, it can still guide us because both recognize similar constitutional principles...." Surge, 160 Wash.2d at 71 n. 4, 156 P.3d 208.
¶ 25 Federal courts have held that entry into the common area of a storage facility does not constitute a search for purposes of the Fourth Amendment. See, e.g., United States v. Boden, 854 F.2d 983, 985 (7th Cir. 1988) (common area of a gated storage facility surrounded by barbed wire fence, with key card access); U.S. v. McGrane, 746 F.2d 632, 634 (8th Cir.1984) (common area of storage facility in basement of apartment building); United States v. Novello, 519 F.2d 1078, 1080 (5th Cir.1975) (common area of storage warehouse). Federal courts have also held that individuals do not have a reasonable expectation of privacy in common area of apartment complexes, even if locked. See, e.g., United States v. Nohara, 3 F.3d 1239 (9th Cir.1993) (hallways of a high security, high-rise apartment building). And we held that a defendant had no Fourth Amendment expectation of privacy in a storage facility's business records. State v. Duncan, 81 Wash.App. 70, 74-75, 912 P.2d 1090 (1996).
¶ 26 In sum, Lakotiy has no state or federal constitutionally protected privacy interest in the common area of a gated commercial storage facility. Because the police officers' warrantless entry into that area was lawful, the trial court properly denied Lakotiy's motion to suppress. Accordingly, we need not address the State's remaining arguments regarding actual authority and automatic standing.

Sufficiency of the Evidence
¶ 27 Lakotiy also argues that the State failed to prove the "possession" element of the crime beyond a reasonable doubt. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wash.2d at 201, 829 P.2d 1068.
¶ 28 RCW 9A.56.140(1) defines the crime of possession of stolen property as "knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." And RCW 9A.56.068 provides, *189 "A person is guilty of possession of a stolen vehicle if he or she [possesses] a stolen motor vehicle." The State alleged that Lakotiy committed the crime "together with another." Under RCW 9A.08.020(3),
[a] person is an accomplice of another person in the commission of a crime if: (a) With knowledge that it will promote or facilitate the commission of the crime, he (i) solicits, commands, encourages, or requests such other person to commit it; or (ii) aids or agrees to aid such other person in planning or committing it.
Possession may be actual or constructive. State v. Summers, 45 Wash.App. 761, 763, 728 P.2d 613 (1986). "Actual possession" means that the goods were in the personal custody of the defendant; "constructive possession" means that the goods were not in actual, physical possession, but the defendant had dominion and control over them. State v. Staley, 123 Wash.2d 794, 798, 872 P.2d 502 (1994). "Dominion and control means that the object may be reduced to actual possession immediately." State v. Jones, 146 Wash.2d 328, 333, 45 P.3d 1062 (2002). We examine the totality of the circumstances, including the proximity of the property and ownership of the premises where the contraband was found, to determine whether there is substantial evidence of dominion and control. State v. Enlow, 143 Wash.App. 463, 469, 178 P.3d 366 (2008).
¶ 29 Here, the evidence and reasonable inferences showed that (1) Lakotiy was standing next to a stolen car in a small storage unit, (2) the car had been partially disassembled and the ignition removed, (3) several parts of the car were on the ground next to the car, (4) another individual in the storage unit was working on the stolen vehicle, and (5) when Lakotiy saw the officers, he reached back and placed a set of jiggler keys and an ignition on the rear of the vehicle. We conclude that this evidence is sufficient to convict Lakotiy of constructive possession of stolen property.
¶ 30 Lakotiy next argues that there are noncriminal inferences from the evidence. He asserts that the ignition might not have been from the stolen car and that the keys might not have been jiggler keys. But "[w]hen considering facts in a challenge to sufficiency of the evidence, courts will draw all inferences from the evidence in favor of the State and against the defendant." State v. Smith, 155 Wash.2d 496, 501, 120 P.3d 559 (2005).
¶ 31 Lakotiy further argues that the totality of the circumstances showed nothing more than a temporary, casual association with the premises and the contraband. He claims he did not have dominion and control over the storage unit and that there was no evidence to show how long he was there before police arrived. Where a defendant lacks dominion and control over the premises, mere proximity and evidence of momentary handling is not sufficient to show constructive possession of contraband. State v. Spruell, 57 Wash.App. 383, 388, 788 P.2d 21 (1990). But the evidence here establishes more than mere proximity and momentary handling of contraband. The evidence is sufficient to establish constructive possession beyond a reasonable doubt.
¶ 32 Because there is no state or federal constitutionally protected privacy interest in the common area of a commercial storage facility, the trial court properly denied Lakotiy's suppression motion. And sufficient evidence supports the conviction. We affirm.
WE CONCUR: SCHINDLER, C.J., and COX, J.
NOTES
[1] The police officers later identified Fedas as the storage unit renter.
[2] The officers acknowledged that each individual key was no different from an ordinary key and that it was the large number of keys that raised suspicion.
[3] The State charged Lakotiy by amended information of the crime of possession of stolen vehicle under both RCW 9A.56.140 (possession of stolen property) and RCW 9A.56.068 (possession of a stolen motor vehicle).
[4] Relying on State v. Larson, 88 Wash.App. 849, 852, 946 P.2d 1212 (1997) and In re Detention of Ambers, 160 Wash.2d 543, 558 n. 6, 158 P.3d 1144 (2007), Lakotiy contends that in determining suppression issues, this court will not affirm on the basis of a theory that the State argues for the first time on appeal. In those cases, the court declined to consider alternative grounds not raised below. But neither case holds that the appellate court lacks discretion to do so where, as here, the record is sufficiently developed.
[5] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[6] Lakotiy argued below that the investigative stop police conducted at the storage unit was unlawful under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) because the officers lacked reasonable suspicion upon which to detain him. But he does not advance this argument on appeal.
[7] Lakotiy, citing State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980), argues that a locked storage facility should receive a higher level of protection than an unlocked one. The Simpson court, holding that the defendant had a legitimate expectation of privacy in the vehicle identification number inside a locked truck, stated, "The very act of `lock[ing] the doors ... against intruders' manifests a subjective expectation of privacy which is objectively justifiable." Simpson at 187, 622 P.2d 1199 (quoting United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)). But the court has subsequently acknowledged that its analysis was focused on the Fourth Amendment. Surge, 160 Wash.2d at 73, 156 P.3d 208.
[8] In this context, Lakotiy also argues that the privacy interest protected by article I, section 7 survives even if there is no Fourth Amendment reasonable expectation of privacy. See, e.g., State v. Boland, 115 Wash.2d 571, 578, 800 P.2d 1112 (1990) (privacy interest in curbside garbage exists even though it may be unreasonable to expect that children, scavengers, or snoops will not sift through it). But the common area of a storage facility lacks protected status. See Bobic, 140 Wash.2d at 259-260, 996 P.2d 610.