# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46459-4-II |
| Respondent, | |
| v. | |
| RYAN J. SCHECHERT, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Ryan Jacob Schechert appeals from his convictions for possession of a controlled substance (methamphetamine) and bail jumping.  Schechert argues that (1) he received ineffective assistance of counsel because counsel failed to research the relevant law regarding constructive possession and "other suspect" evidence, and failed to reasonably investigate to discover the owner of the drugs, (2) the prosecutor committed misconduct during closing by arguing that the jurors could find that Schechert's excuse for his bail jumping defense was not a "legal defense," (3) the trial court erred when it admitted evidence of Schechert's prior drug use and (4) erred in imposing legal financial obligations (LFOs) as a condition of sentence without inquiring into his ability to pay.

We hold that (1) Schechert's counsel provided effective assistance, (2) the prosecutor did not commit misconduct during closing argument, and (3) the trial court did not err when it admitted testimony about Schechert's prior drug use to establish his knowledge of the presence of the methamphetamine found in his house.  Further, (4) we exercise our discretion, review the trial

court's imposed discretionary LFOs, and hold that the trial court failed to conduct an individualized inquiry into Schechert's ability to pay as required under RCW 10.01.160(3) and *Blazina*.[1] Thus, we affirm Schechert's convictions, but remand to the trial court to conduct an individualized inquiry into his current and future ability to pay as required under RCW 10.01.160(3).

FACTS

I. Drug Possession

On June 5, 2013, Kitsap County Sheriff's Department executed a search warrant for Ryan Schechert's home on Sidney Avenue in Port Orchard, Washington. When officers arrived at the residence, they encountered a man in the driveway who identified himself as CH.[2] Officers made contact with the homeowner, Ryan Schechert, and entered the house. Schechert was in the middle of moving to another residence, but still slept at his home on Sidney Avenue, had been subletting the property and cleaning it up, and had allowed a number of people to store their belongings there.

When conducting a search of the master bedroom, the "orange room," Detective Gerald Swayze discovered a roughly textured gold makeup compact containing methamphetamine. III Verbatim Report of Proceedings (VRP) at 192. Next to the compact was Schechert's wallet, identification, various pieces of mail addressed to Schechert, and a traffic citation with Schechert's name on it. The room was messy, and Swayze noted men's clothing among the various items in the room.

---

[1] *State v. Blazina*, 182 Wn.2d 827, 838-39, 344 P.3d 680 (2015).

[2] We use initials for other individuals in this opinion to protect their privacy interests.

Police arrested Schechert and charged him with one count of possession of a controlled substance.

II. BAIL JUMPING

On February 10, 2014, Schechert was living at his uncle's residence with his cousin and uncle. Schechert's uncle was temporarily in an assisted living facility while he recovered from heart surgery. On February 10, Schechert's cousin woke him up in a "panic state" and told Schechert that he needed to "[g]et this place safe for [his uncle]," because the assisted living facility was releasing the uncle that morning. III VRP at 276. After Schechert's cousin dropped his uncle off, the cousin was out running errands until about 2:30 p.m., leaving Schechert to change his uncle's bandages and ensure that his uncle was comfortable.

Schechert had a court appearance scheduled for that morning for which he failed to appear, and did not attempt to contact the court or his attorney until the next day. On February 13, the next court hearing to quash the bench warrant issued after Schechert's failure to appear, Schechert's attorney told the court that he failed to appear due to an "honest mistake." III VRP at 304. During the hearing, Schechert did not explain that he was caring for his uncle that day because the judge did not allow him to speak.

The State amended the charges to add one count of bail jumping.

III. TRIAL

At trial, Schechert asserted unwitting possession as a defense to his possession charge. Schechert alleged that the makeup compact belonged to another person and denied knowing that the makeup compact was in the house or ever having seen it before. To rebut Schechert's unwitting possession defense, the State moved to admit, under ER 404(b), CH's testimony that shortly before

3

the June 5 search warrant, that he and Schechert had smoked methamphetamine at Schechert's house, and that Schechert retrieved the methamphetamine and pipe from a back room.

The trial court initially reserved its ruling, but after additional testimony, argument, and an offer of proof by the State as to CH's expected testimony, the trial court admitted the testimony for the limited purpose of demonstrating Schechert's knowledge that the drugs were in the house. The trial court gave a limiting instruction to the jury.[3]

During closing, the prosecutor argued that Schechert's reason for failing to appear in court on February 10 was not a valid legal defense. The prosecutor made the following remarks,

> The defense [to bail jumping] is laid out for you, I believe it's Instruction No. 17.[4] That defense includes a number of categories of [the] kind of excuses that our legislature recognizes. It's not necessarily an exclusive list, but it gives you an

---

[3] The trial court gave the following limiting instruction:

> I'm admitting certain evidence in this case for only a limited purpose. This evidence consists of evidence that the defendant may have used methamphetamine in his residence previously. It may be considered by you only for the purpose of considering the defendant's knowledge of the alleged methamphetamine located in the defendant's home on June 5, 2013. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

IV VRP at 388.

[4] Jury Instruction No. 17 provided, in relevant part,

> It is a defense to the charge of Bail Jumping that uncontrollable circumstances prevented the person from appearing or surrendering, . . . and that the person appeared or surrendered as soon as such circumstances ceased to exist.
>
> An "uncontrollable circumstance" means an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of man such as an automobile accident or threats of death, forcible sexual attack, or substance bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.

CP at 54.

idea of the kind of things that -- the system we recognize -- as a valid reason to have a legal defense for missing court on a particular day.

. . . .

I would like you to think about. . . . whether or not you believe that [Schechert's excuse that he missed his court date to attend to his uncle] even qualifies as a legal defense to a bail-jumping charge.

. . . .

You'll notice that one of the defenses is not "I forgot." Or, "I got confused as to the dates." He's not asking you to find that because that's not a legal defense to this, as you can see, in your Instruction No. 17.

. . . .

[An act of nature, an emergency medical condition, or act of man] are the kind of things for which our society has recognized there's a legal defense to not showing up for your trial date.

. . . .

[Even if Schechert's excuse is true, needing to care for a sick uncle] it doesn't qualify as a legal defense. There's certain things we're willing to recognize. This doesn't fall into any of those categories.

IV VRP 413, 418-19. Schechert did not object to these remarks during closing.

IV. SENTENCING

At sentencing, the trial court imposed LFOs on Schechert as a condition of sentencing.[5]

Schechert did not object to the imposition of the LFOs. Schechert appeals.

---

[5] The court imposed the following mandatory LFOs: $500 victim assessment, $100 DNA fee, and $1,000 drug fine. The trial court imposed the following discretionary LFOs: $1,135 court-appointed attorney fees, $200 filing fee, $500 contribution to SIU—Kitsap County Sheriff's Office, $100 contribution for the Kitsap County Expert Witness Fund, and an unspecified statutory jury demand fee as discretionary LFOs.

No. 46459-4-II

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Schechert argues that he was denied effective assistance of counsel because his attorney failed to (1) research and know the relevant law on constructive possession and the law of "other suspect" evidence and (2) reasonably investigate who owned the makeup compact where the methamphetamine was found and discover that the initials "KMM" were inscribed in it. Schechert argues that the deficient performance prejudiced him. Schechert's claim of ineffective assistance fails.

We review an ineffective assistance of counsel claim de novo, and presume that counsel's performance was adequate and reasonable. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance of counsel, the appellant must show that counsel's performance was deficient and that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Deficient performance is that which falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Reasonable conduct for an attorney includes carrying out the duty to research the relevant law. *Kyllo*, 166 Wn.2d at 862 (citing *Strickland*, 466 U.S. at 690-91). Conduct categorized as legitimate trial tactics or strategies is not deficient performance. *Grier*, 171 Wn.2d at 33.

6

A. CONSTRUCTIVE POSSESSION

Schechert argues that trial counsel "unreasonably failed to research law relevant to the issue of constructive possession." Br. of Appellant at 14. We disagree.

Constructive possession is the exercise of dominion and control over an item, and is established by viewing the totality of the circumstances, including the proximity of the property and ownership of the premises where the contraband was found. *State v. Enlow*, 143 Wn. App. 463, 468, 178 P.3d 366 (2008) (citing *State v. Callahan*, 77 Wn.2d 27, 29-30, 459 P.2d 400 (1969); *State v. Turner*, 103 Wn. App. 515, 522-23, 13 P.3d 234 (2000)). However, exclusive control of the premises is not necessary to establish constructive possession but mere proximity is not enough. *Enlow*, 143 Wn. App. at 469.

Here, Schechert owned the home on Sidney Avenue, slept there, sublet it, and allowed "a number of other people" to store things in his home. III VRP at 310. Law enforcement found mail, Schechert's wallet, and a traffic citation bearing Schechert's name and identification in the orange room next to the methamphetamine. All of these facts establish that Schechert had dominion and control over the premises.

Although Schechert alleges that his counsel failed to argue that the compact belonged to someone else, counsel did elicit testimony from Schechert that he had men and women over at his house "[a]ll the time, every night" and that he did not know the compact containing the methamphetamine was in the back bedroom. III VRP at 271. Also, counsel argued that Schechert did not know that the methamphetamine was in his home, that the compact was in a messy room, and that numerous other people were often in the house and left their belongings there. During the State's cross-examination, Schechert confirmed that the compact was not his.

There is no evidence in the record that counsel failed to research and know the relevant law of constructive possession, and counsel did argue that another person could have left the compact there without Schechert knowing. Thus, Schechert's claim here fails.

B. "OTHER SUSPECT" EVIDENCE

Schechert also argues that counsel was ineffective because he failed to research or know the relevant law on evidence of other suspects. We disagree.

To admit evidence suggesting that another person committed the crime, the defendant must lay a foundation establishing a "train of facts or circumstances" that provides a clear nexus between the other person and the crime. *State v. Strizheus*, 163 Wn. App. 820, 830, 262 P.3d 100 (2011). The evidence must be relevant and admissible under ER 403 and must establish more than mere suspicion that another person might have committed the crime, and evidence that only establishes suspicion is inadmissible. *State v. Franklin*, 180 Wn.2d 371, 380, 325 P.3d 159 (2014). Some combination of facts or circumstances must point to a nonspeculative link between the other suspect and the charged crime. *Franklin*, 180 Wn.2d at 381. The defendant has the burden of showing that the other suspect evidence is admissible. *Strizheus*, 163 Wn. App. at 830.

Here, the only evidence linking another suspect to the compact was that the initials KMM were allegedly scratched onto the compact, that people were constantly coming in and out of Schechert's home and stored items there, and that the alleged other suspect, KM, admitted that she used methamphetamine, but she could not be located.[6] Further, there was no specific evidence

---

[6] There was no evidence in the record on appeal that there were etchings in the compact, and the only mention of KM's alleged drug use was during motion arguments to the court outside the presence of the jury.

linking anyone else to the compact[7] and Schechert's evidence that KM was the suspected owner

of the compact was inadmissible. *Franklin*, 180 Wn.2d at 380. Thus, there is no indication in the

record that counsel failed to research or know the law of other suspect evidence, and Schechert's

argument fails.

C. REASONABLE INVESTIGATION

Schechert argues that, because counsel failed to notice the initials KMM scratched into the

surface of the compact, he did not conduct a reasonable investigation. However, Schechert failed

to designate the admitted exhibits on appeal, only designating black and white photographs of the

compact, which are devoid of any detail. Nothing in the designated clerk's papers or the verbatim

report of proceedings references any initials on the compact. Thus, because Schechert fails to meet

his burden of perfecting the record on appeal, we decline to review this issue under RAP 9.6.[8]

D. PREJUDICE

Schechert argues that there is a reasonable probability that counsel's deficient performance

affected the jury's verdict. Because he fails to show that counsel's performance was deficient—

the first prong of the *Strickland*[9] test—we hold that Schechert's claim of ineffective assistance of

counsel fails.

---

[8] The appellant bears the burden of complying with the Rules of Appellate Procedure (RAP) and perfecting the record on appeal so the reviewing court has before it all the facts necessary to decide the issues. *State v. Drum*, 168 Wn.2d 23, 38 n.3, 225 P.3d 237 (2010).

[9] *See* 466 U.S. at 687-88.

II. PROSECUTORIAL MISCONDUCT

Schechert argues that the prosecutor committed misconduct during closing when she argued that Schechert's reason for missing court on February 10 was not a valid legal defense to the bail jumping charge. He also argues that his counsel's failure to object to the misconduct was unreasonable and deprived him of effective assistance of counsel. We disagree.

To prevail on a claim of prosecutorial misconduct during closing argument, a defendant must prove that the prosecutor's remarks were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 272-73, 341 P.3d 268 (2015) (citing *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)). To show prejudice, a defendant must demonstrate a substantial likelihood that the misconduct affected the jury verdict. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012); *State v. Hecht*, 179 Wn. App. 497, 503, 319 P.3d 836 (2014).

Failure to object to alleged improper remarks constitutes waiver of the error unless the remarks were, "'so flagrant and ill intentioned that it causes an enduring and resulting prejudice'" that could not be cured by an instruction to the jury. *Thorgerson*, 172 Wn.2d at 443 (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). We consider the effect of a prosecutor's alleged improper conduct in the context of the trial as a whole—the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). An attorney may argue a reasonable interpretation of the law, but "[a] prosecuting attorney commits misconduct by misstating the law." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 726, 327 P.3d 660 (2014); *Allen*, 182 Wn.2d at 373-74 (citing *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008)).

To support his uncontrollable circumstances defense to the bail jumping charge, Schechert testified that, on the morning of February 10, his cousin woke him up about 8:00 a.m. telling him that Schechert's ailing uncle was coming home from an assisted living facility. Schechert testified that his cousin returned with the uncle around 9:00 a.m., and then was out running errands until about 2:30 p.m. Schechert admitted that there was a phone at the house and that he did not contact anyone about missing the court hearing until the following morning.

During closing argument, the prosecutor asked the jury to find that Schechert's reason for missing his February 10 court date was not a "legal defense" to bail jumping. IV VRP at 413, 418. The prosecutor pointed out the list of defenses to bail jumping from jury instruction 17, and asked the jury to consider, "whether or not you believe that [Schechert missed his court date to attend to his uncle] even qualifies as a legal defense to a bail-jumping," and she further argued that one of the listed defenses "is not 'I forgot,' [o]r, 'I got confused.'" IV VRP at 413, 418. The prosecutor then read the definition of "uncontrollable circumstance" to the jury. IV VRP at 418. Schechert did not object to any of these remarks during closing.

The prosecutor's remarks during closing asked the jury to find that his excuse—that he had to care for his uncle—did not qualify as an uncontrollable circumstance under the law. These remarks go to the State's theory of the case for Schechert's affirmative defense to the bail jumping charge, not to whether the prosecutor misstated the law to the jury during closing argument. Thus, it was not improper for the prosecutor to argue her reasonable interpretation of what an "uncontrollable circumstance" was to justify Schechert's missed court date.

Furthermore, these are not the kind of remarks that we find so inflammatory as to be incurable by instruction. *See Emery*, 174 Wn.2d at 763 (citing the prosecutor's remarks in *State*

11

*v. Belgarde*, 110 Wn.2d 504, 506-07, 755 P.2d 174 (1988) referring to the American Indian defendant as part of "'a deadly group of madmen'" and "'butchers'" (emphasis and internal quotation marks omitted)). Even if the prosecutor's remarks were improper, Schechert provides no explanation as to why a curative instruction would not have remedied the alleged error. *See Thorgerson*, 172 Wn.2d at 443 (stating that failure to object to an improper remark waives the error unless the resulting prejudice was incurable by an instruction to the jury).

Finally, even if the prosecutor's remarks were improper, defense counsel's failure to object is not deficient performance, because, "'absent egregious misstatements,'" lawyers do not commonly object during closing arguments. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 717, 101 P.3d 1 (2004) (quoting *U.S. v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1991)). Thus, because the prosecutor's remarks were neither improper nor prejudicial, Schechert's claim fails.

III.     ER 404(B) EVIDENCE

Schechert argues that the trial court erred when it allowed CH to testify that he smoked methamphetamine with Schechert in his home approximately two weeks before the police executed the search warrant of his house. We disagree.

We review a trial court's evidentiary ruling for an abuse of discretion. *State v. Slocum*, 183 Wn. App. 438, 449, 333 P.3d 541 (2014).

> "A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons, i.e., if the court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law."

*Slocum*, 183 Wn. App. at 449 (quoting *State v. Hudson*, 150 Wn. App. 646, 652, 208 P.3d 1236 (2009)).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b).

> To admit evidence of a person's prior bad acts,

> "[T]he trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

*State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). Erroneous admission of evidence of prior bad acts requires reversal if there was a reasonable probability that the error materially affected the trial's outcome. *State v. Pogue*, 104 Wn. App. 981, 988, 17 P.3d 1272 (2001). The trial court may admit evidence of a prior bad act for purposes other than to show propensity, such as to rebut a material assertion. *State v. Phillips*, 160 Wn. App. 36, 46, 246 P.3d 589 (2011).

Evidence of prior drug use can be relevant to show that the defendant knew there were drugs on the premises. *State v. Weiss*, 73 Wn.2d 372, 377, 438 P.2d 60 (1968). In *Weiss*, during trial for marijuana possession, a witness testified that he had smoked marijuana at the house with the defendant and the defendant knew that there was marijuana in the house. *Weiss*, 73 Wn.2d at 374, 377. The Supreme Court held that the evidence that the defendant had previously used drugs at the home, "had a direct bearing on the issue of constructive possession . . . [and] whether the defendant knew of the presence of the marijuana found in the house." *Weiss*, 73 Wn.2d at 377 (citing *State v. Hall*, 41 Wn.2d 446, 249 P.2d 769 (1952)).

In *State v. Pogue*, the Supreme Court held that evidence of a prior drug conviction was only propensity evidence if offered to show that because he possessed cocaine before, he likely possessed it for the present charge. 104 Wn. App. 981. The *Pogue* court highlighted *Weiss* as a case where evidence of a defendant's prior drug possession and use were relevant and admissible to show knowledge of the presence of drugs in the house. *Pogue*, 104 Wn. App. at 985-86.

Here, the State sought to admit CH's testimony to rebut Schechert's unwitting possession defense, and, initially, the trial court denied admission. After CH testified to knowing Schechert and being at the house on several occasions before the police executed the search warrant, and after Schechert testified that he did not know the drugs were in the back room of the house, the trial court heard additional arguments on the ER 404(b) evidence. The State provided an outline of CH's expected testimony that, when they smoked methamphetamine together a few weeks prior to Schechert's arrest, Schechert went into one of the back bedrooms and came out with methamphetamine and a pipe.

On the record, the trial court carefully considered the impact of the ER 404(b) evidence and its weight before admitting CH's testimony. Because of CH's prior testimony on other matters, the trial court already had the opportunity to evaluate CH's credibility that the drug use likely occurred. Relying on *Weiss* and *Pogue*, the court stated that it would admit CH's testimony to establish the "absence of mistake, accident, intent, and knowledge" and rebut Schechert's unwitting possession defense, and would give a limiting instruction. III VRP at 347.

The trial court then allowed CH's testimony, and gave a limiting instruction to the jury that the drug use evidence "may be considered by you only for the purpose of considering the defendant's knowledge of the alleged methamphetamine located in the defendant's home," and

14

could not be considered for any other purpose. III VRP at 370. We presume that jurors follow the court's instructions. *State v. Yates*, 161 Wn.2d 714, 763, 168 P.3d 359 (2007).

In addition to CH's testimony, to establish constructive possession, the State provided photographic evidence and testimony by law enforcement officers that they found Schechert's mail, wallet, and identification next to the makeup compact containing the methamphetamine. Detective Swayze testified that men's clothes were in the master bedroom where the methamphetamine was found. And Schechert himself testified that he owned the house, slept in the house, sublet the house, and allowed other people to store their belongings there. Because additional evidence established that Schechert had dominion and control over the premises, and we presume the jury followed the court's instructions, Schechert fails to establish that the admission of CH's testimony was unfairly prejudicial and affected the outcome of trial. Thus, Schechert fails to show that the trial court abused its discretion when it admitted CH's testimony to show his knowledge of the presence of the methamphetamine in the house, and his argument fails.

IV. LEGAL FINANCIAL OBLIGATIONS

Finally, Schechert argues, for the first time on appeal, that the trial court erred when it imposed LFOs without making an individualized inquiry into his current and future ability to pay them. Generally, we may decline to review issues raised for the first time on appeal. RAP 2.5(a). Following our Supreme Court's opinion in *State v. Marks*,[10] we decline to follow our prior

---

[10] *State v. Marks*, No. 91148-7, 2016 WL 743944 (Feb. 25, 2016).

approach in *State v. Lyle*.[11]  Instead, we will determine on a case by case basis whether to exercise

our discretion to reach the LFO issue.  Here, we choose to exercise our discretion to examine this

issue.

> RCW 10.01.160(3) provides:
>
> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them.  In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

> There is little information in the record regarding Schechert's financial circumstances, and

the evidence presented at the sentencing hearing and the court's order of indigency suggested that

Schechert had no assets.  However, Schechert testified at the sentencing hearing that he is a

veteran, has a bachelor's degree, and, at the time of sentencing, was employed as a roofer and

wanted to continue to work.[12]

> While the evidence suggests that Schechert was employed at the time of incarceration, the

trial court did not make any further inquiry into whether Schechert could potentially gain future

employment after his release, whether he had any outstanding debts or liability, or whether there

were other circumstances that would prevent him from earning an income.  The trial court failed

to make an individualized inquiry into Schechert's current and future ability to pay the $1,935 in

---

[11] *State v Lyle*, 188 Wn. App. 848, 355 P.3d 327 (2015), *petition for review granted in part*, ___ Wn.2d ___, 365 P.3d 1263 (2016).

[12] Schechert also testified at trial that he was under contract to rent-to-own the property at 2315 Sidney Avenue, that he was subletting the property to other individuals, and there is no indication that he was no longer under contract to acquire the property.

discretionary LFOs[13] as required under RCW 10.01.160(3). Thus, we remand to the trial court to conduct an individualized inquiry into Schechert's ability to pay the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina*.[14]

## CONCLUSION

We hold that (1) Schechert's counsel was effective, (2) the prosecutor did not commit misconduct during closing argument, and (3) the trial court did not abuse its discretion when it admitted ER 404(b) evidence to establish Schechert's knowledge of the methamphetamine's presence in his home. And we affirm Schechert's convictions. But we remand to the trial court to conduct an individualized inquiry into Schechert's current and future ability to pay the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.

---

[13] The trial court imposed $1,600 in mandatory LFOs, which we do not review.

[14] *Blazina*, 182 Wn.2d at 838-39.