THE STATE OF WASHINGTON, *Appellant*, v.
NICHOLETTE P. SONDERGAARD, *Respondent.*

*James H. Krider, Prosecuting Attorney*, and *David F. Thiele, Deputy,* for appellant.

*Eric Broman, Lindsay Brown,* and *Nielsen & Acosta,* for respondent.

BECKER, J. — Officer Michael Post responded to a 911 call placed by a renter of a hotel room. The caller wanted the police to remove Nicholette Sondergaard from the room because she was acting irrationally. After talking briefly with Sondergaard, Officer Post obtained her permission to search her purse. After searching the purse and finding drugs, Officer Post arrested Sondergaard and took her to a hospital.

Upon being charged with possession of a controlled substance, Sondergaard moved to suppress evidence of the drugs as obtained by a warrantless search to which she did not validly consent. The court below granted the motion to suppress, and the State appeals.

We decline the State's invitation to reverse the trial court by applying the medical emergency exception to the warrant requirement.[1] The State did not argue below that the medical emergency exception justified the search. While we may affirm a trial court's decision on a different

[1]*See State v. Loewen*, 97 Wn.2d 562, 567-70, 647 P.2d 489 (1982).

ground if the record is sufficiently developed to consider the ground fairly,[2] the State cites no authority for reversing a trial court on alternative grounds not considered below. The trial court did not commit error by failing to rule, sua sponte, that a warrantless search was justified under a theory the State did not present.

Accordingly, the only issue we consider on appeal is whether Sondergaard validly consented to the search of her purse. We affirm the trial court's finding that she did not.

At the suppression hearing, the State called Officer Post as its only witness. He testified that upon his arrival at the hotel he was invited into the room and directed to Sondergaard. He observed Sondergaard sitting in a dark room, fidgeting, rocking back and forth, and occasionally pointing at nothing in particular. Officer Post conversed with Sondergaard for two or three minutes, during which time she nonsensically mentioned that a soda can was moving.

Officer Post asked Sondergaard if she was on any drugs, and she said no. He then asked if he could look in her purse. Without hesitation, Sondergaard said he could. The officer saw a purse on the floor, just outside the bedroom door, and asked if it was hers. She said, "yes." Upon discovering narcotics in the purse, Officer Post arrested Sondergaard. Concerned about her physiological condition, he drove her to the hospital. By the time they reached the hospital Sondergaard began to "really rave." She screamed at Officer Post that he was letting his wife be killed by the falling ceiling tiles.

The State argued that Sondergaard's consent to the search was an act of free will, and emphasized that the officer made no threats or promises to obtain her consent. The defense argued that Officer Post's failure to advise Sondergaard of her right not to consent to the search was

---

[2]*See, e.g., State v. Hudson,* 79 Wn. App. 193, 194 n.1, 197, 900 P.2d 1130 (1995), *aff'd,* 130 Wn.2d 48, 921 P.2d 538 (1996).

a factor to consider in determining voluntariness of consent. The defense emphasized "it's undisputed that the defendant was hallucinating at the time." The trial court ruled that the consent given was not valid because, while the officer's conduct was not coercive, the State had not shown the defendant was able to make a rational judgment:

> With the burden on the State, the best I can do is conclude that she may well not have known what was going on. If she sees things moving that aren't moving and is in a hallucinatory state, I cannot and I will not find that her consent is valid.

The trial court then entered a certificate pursuant to CrR 3.6. In the certificate, the court noted that it was undisputed that Officer Post did not advise Sondergaard of any rights before asking if he could search her purse. The court described the disputed facts: "The state and defense do not agree as to the extent of the deterioration of the defendant's mental state at the time she agreed to a search of her purse." The court resolved the factual dispute against the State: "The court finds that the defendant was in a hallucinatory state at the time she agreed to let Officer Post search her purse, and was mentally incapable of understanding what was happening and mentally incapable of giving a voluntary consent." The court concluded that the officer:

> was not coercive towards the defendant when asking for permission to search her purse. However, the state has not met its burden of showing knowing, intelligent and voluntary consent on the part of the defendant. This is because the defendant was in a hallucinatory state at the time and was not advised of her constitutional rights or her right to refuse the search.

The State assigns error to the entry of the CrR 3.6 certificate. The State argues that the trial court's conclusion of invalid consent is erroneous, as a matter of law, in view of the court's finding that there was no coercive police conduct.

██ A search conducted pursuant to a valid consent is a well-recognized exception to the warrant requirement. Where the government seeks to rely upon consent to justify a warrantless search, it must prove that the consent was voluntary. The leading case on the voluntariness of a search is *Schneckloth v. Bustamonte*,[3] decided by the United States Supreme Court in 1973. *Schneckloth* controls analysis under the Fourth Amendment. Also, analysis under article 1, section 7 of Washington's constitution must be consistent with *Schneckloth*.[4]

*Schneckloth* holds that the inquiry is whether "the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied."[5] Voluntariness is a question of fact to be determined from the totality of the circumstances.[6] The definition is not "talismanic"[7] or mechanical. *Schneckloth* recognizes that "the possibly vulnerable subjective state of the person who consents"[8] is a permissible factor for the trial court to weigh. The "traditional definition of voluntariness" accepted in *Schneckloth* "has always taken into account evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights; and the voluntariness of any statement taken under those conditions has been carefully scrutinized to determine whether it was in fact voluntarily given."[9]

In 1986, the United States Supreme Court in *Colorado v. Connelly*[10] ruled on the voluntariness of a confession. The defendant approached a uniformed police officer in

---

[3]*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

[4]*State v. McCrorey*, 70 Wn. App. 103, 111, 851 P.2d 1234 (1993).

[5]*Schneckloth*, 412 U.S. at 248-49.

[6]*Schneckloth*, 412 U.S. at 227.

[7]*Schneckloth*, 412 U.S. at 224.

[8]*Schneckloth*, 412 U.S. at 229.

[9]*Schneckloth*, 412 U.S. at 248.

[10]*Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).

Denver and stated that he had murdered someone and wanted to talk about it. The officer gave *Miranda*[11] warnings, and the defendant said he understood these rights but still wanted to talk about the murder. In response to the officer's questions, the defendant denied that he had been drinking or taking drugs, but said he had been a mental patient in several mental hospitals.[12] He proceeded to confess the story of the murder. To the officer, the defendant appeared to understand fully the nature of his acts. At a preliminary hearing a psychiatrist testified that the defendant suffered from chronic schizophrenia, and at the time of his confession was suffering from command hallucinations which interfered with his ability to make free and rational choices.[13] The Colorado courts decided the confession must be suppressed as involuntary.[14]

The United States Supreme Court reversed. The Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."[15] The mental condition of the defendant, while it is a significant factor in the voluntariness calculus, "does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' "[16]

*Schneckloth* and *Connelly* are not fundamentally different holdings. Both analyze voluntariness in relation to the presence or absence of police coercion. Both treat "voluntary" and "coerced" as mutually exclusive terms. The difference is *Connelly*'s explicit requirement that there be a predicate finding of police coercion, as compared to

---

[11]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. E. 2d 694 (1966).

[12]*Connelly*, 479 U.S. at 160.

[13]*Connelly*, 479 U.S. at 161.

[14]*Connelly*, 479 U.S. at 162.

[15]*Connelly*, 479 U.S. at 167.

[16]*Connelly*, 479 U.S. at 164.

*Schneckloth*'s emphasis on the totality of the circumstances.

The State asks us to review the trial court's suppression order under *Colorado v. Connelly*. The State contends the order must be reversed because there is no predicate finding of police coercion. The trial court expressly found the officer was not coercive, and instead rested its conclusion upon a determination that Sondergaard lacked the capacity to understand the officer was asking her for permission to look in her purse.

For three reasons, we reject the invitation to use *Connelly* as the foundation for review. First, we have found no case holding that *Connelly*, a confession case, has overruled or modified *Schneckloth*, a consent to search case. To the contrary, *Connelly*'s reasoning has "not yet been generally applied to consensual searches."[17] The Eleventh Circuit has decided to adhere to *Schneckloth* because "we do not understand *Colorado v. Connelly* to overturn existing fourth amendment consent jurisprudence."[18]

Second, assuming *Connelly* extends to search and seizure law, it is not clear that even under *Connelly* reversal would be required. Any mental impairment experienced by the defendant in *Connelly* was not obvious at the time. When a person with an obvious mental disability or incapacity gives what appears to be a consent to search, that apparent consent is not necessarily rendered voluntary simply because the police asked for consent in a nonthreatening manner:

> *Connelly* says there must also exist "the crucial element of police overreaching," which was not present in that case because the police merely received the confession of a person who approached them and volunteered it. But precisely because those were the facts in *Connelly*, that decision leaves somewhat uncertain how the "overreaching" judgment is to be made in the more typical interrogation or consent search

---

[17]*United States v. Hall*, 969 F.2d 1102, 1108 n.6 (D.C. Cir. 1992).

[18]*Tukes v. Dugger*, 911 F.2d 508, 517 n.13 (11th Cir. 1990).

situation. It might be argued on the one hand that the very act of interrogating or seeking consent to search from one known to be under a substantial mental disability supplies the requisite coercion, or on the other that police "knowledge that a suspect may have mental problems does not make the suspect's statements [or consent] involuntary" unless there are coercive tactics beyond mere questioning or seeking of consent.[19]

Federal cases continue to suggest, post-*Connelly*, that lack of capacity is, by itself, a sufficient basis on which to find a consent to search involuntary.[20]

■ Third, the State did not cite *Colorado v. Connelly* to the trial court. The only case cited to the trial court by either party was *Schneckloth*. The trial court had no opportunity to consider whether *Connelly*, as compared to *Schneckloth*, calls for a different analysis or dictates a different approach to making findings of fact. We will not reverse the trial court for failing to follow a case not called to its attention and not directly on point. We will adhere to *Schneckloth* as the basis of review of the suppression order.

The trial court concluded the State had not met its burden of showing "knowing, intelligent and voluntary consent on the part of the defendant." The State contends this shows the trial court required the State to prove more than *Schneckloth* requires. As the State correctly observes, the words "knowing" and "intelligent" are misplaced. Under *Schneckloth*, the State's only burden is to prove the consent was voluntary. *Schneckloth* was written to reject

---

[19]3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 8.2(e), at 671-72 (3d ed. 1996) (footnotes omitted).

[20]*See e.g., United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994) ("In determining whether a consent to search is voluntary, a court should consider, *inter alia*, . . . the physical and mental condition and capacity of the defendant within the totality of the circumstances."); *United States v. Magness*, 69 F.3d 872, 874 (8th Cir. 1995) ("[w]ithout credible evidence of intoxication *or* any evidence of coercive police conduct, Magness's argument that his consent and confession were involuntary must fail") (emphasis added); *United States v. Kelley*, 953 F.2d 562, 565 (9th Cir. 1992).

a requirement imposed by the Ninth Circuit, that the State must affirmatively prove the subject of a search knew there was a right to refuse consent.[21] The lack of any effective warning or advice of a right to refuse consent is far from dispositive under *Schneckloth*, though it may be considered as part of the totality of the circumstances.[22] But here, the court's use of extra words in its conclusion does not mean it applied the wrong law. The argument, the court's oral ruling, and the factors considered in the suppression order are consistent with *Schneckloth*, not with the standard rejected in *Schneckloth*.

The State also contends there is insufficient factual support in the evidence for the trial court's finding that the defendant "was mentally incapable of understanding what was happening." The State points out that Sondergaard, notwithstanding her hallucination that the soda can was moving, was able to respond to Officer Post in a way that was not incoherent. She also had the presence of mind to deny to the officer that she was on drugs.

■ The evidence the State points to might support a finding that Sondergaard was mentally capable of understanding what has happening.[23] But it does not require such a finding, nor does it preclude the opposite finding. Findings of fact pertaining to a search are reviewed under the substantial evidence standard.[24] After a hearing, the trial court found that the defendant was in a hallucinatory state when she agreed to the search, and "was mentally incapable of understanding what was happening." From the officer's unrebutted description of Sondergaard's behavior, this was a permissible inference, and we

---

[21]See *Schneckloth*, 412 U.S. at 229.

[22]*Schneckloth*, 412 U.S. at 248-49.

[23]See *United States v. Rambo*, 789 F.2d 1289 (8th Cir. 1986) (the mere fact that one has taken drugs does not render consent to search involuntary; the question is one of mental awareness); 3 WAYNE R. LaFAVE SEARCH AND SEIZURE § 8.2(e), at 668, 670.

[24]*State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

conclude the finding was supported by substantial evidence.

Affirmed.

WEBSTER, J., concurs.

AGID, J. — I respectfully dissent. The analysis of "voluntariness" as applied to a consent to search in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), is based entirely on the identical concept in the context "of determining whether in fact the *confessions* in issue had been 'voluntarily' given. It is to that body of case law to which we turn for initial guidance on the meaning of 'voluntariness' in the present [consent to search] context." 412 U.S. at 223-24 (emphasis added; footnote omitted). While the Court adhered to the general totality-of-the-circumstances test as enunciated by the California Supreme Court, it never strayed from the analysis of voluntariness articulated in the confession cases. "As with police questioning, two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent—the legitimate need for such searches and the equally important requirement of assuring the *absence of coercion*." *Id.* at 227 (emphasis added). The Court summarized its approach to analyzing the voluntariness of a consent to search: "In sum, there is no reason for us to depart in the area of consent searches, from the traditional definition of 'voluntariness.' " *Id.* at 229. Nowhere does the *Schneckloth* court deviate from the requirement that, to be involuntary, a consent search must be the product of at least some police coercion.

This approach is entirely consistent with the decision in *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986), which the majority seeks to distinguish. Noting that the concept of voluntariness, in all its elusive iterations, is based on the Due Process Clause and notions of fundamental fairness, 479 U.S. at 163, the Court held that "[a]bsent police conduct causally related to the confes-

sion, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 164 (footnote omitted). The *Connelly* Court went on to specifically reject the concept the majority relies on here. Recognizing that more subtle forms of police "persuasion" have led to a greater focus in the voluntariness analysis on the defendant's mental condition, the court nonetheless held that "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' " *Id.* at 164. After rejecting Connelly's analysis of two cases he asserted found involuntariness on the basis of mental state alone, the Court said, "These two cases demonstrate that while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Id.* at 165. The Court reasoned that, without some police coercion, there is no state action on which to base a violation of the Due Process Clause. The *Connelly* Court summarized its holding: "We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167.

In our case, the trial court specifically found that there was no police coercion at all associated with Sondergaard's consent to search her purse. The definition of voluntariness for Due Process Clause purposes is the same whether the issue is a consensual search or a confession. Because both the *Schneckloth* and *Connelly* courts require at least some hint of police coercion as a prerequisite to excluding evidence, I would reverse the trial court and remand the case for trial.

Review denied at 133 Wn.2d 1030 (1998).