2018 JUN 18 AM 8:42

COURT OF APPEALS DIV I
STATE OF WASHINGTON

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

THE STATE OF WASHINGTON, ) No. 75939-6-I
)
Respondent, )
)
v. ) UNPUBLISHED OPINION
)
EDWARD FRANCIS WALLER, )
)
Appellant. ) FILED: June 18, 2018

SCHINDLER, J. — A jury convicted Edward Francis Waller of one count of unlawful possession of a firearm in the second degree. Waller asserts the trial court erred in denying his motion to suppress the firearm seized during the search of his bedroom and the custodial statement he made after waiving his Miranda[1] rights. Waller contends he lacked the capacity to consent to the search or voluntarily waive his Miranda rights. Waller also claims he was denied his constitutional right to a unanimous jury. We affirm.

## FACTS

Twenty-nine-year-old Edward Francis Waller lived with his mother Cheryl Doherty. As a condition of a prior juvenile felony conviction, Waller was prohibited from possessing a firearm.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

When Waller came home the evening of July 5, 2016, he "made a beeline for his room and locked himself in." Doherty said Waller appeared under the influence of drugs or alcohol and she smelled an "acrid" odor coming from his bedroom. Because Doherty believed Waller had a loaded gun in his bedroom, she was concerned for his safety and called 911.

Whatcom County Deputy Sheriff Chris VandenBos and Deputy Mark Jilk responded to the 911 call. Deputy VandenBos knocked on the bedroom door. After about a minute, Deputy VandenBos heard Waller make a "grunting" noise. Deputy VandenBos continued to knock on the door. Waller responded with grunts or one-word statements and "said he was fine." Deputy VandenBos suggested that Waller come outside to smoke a cigarette and talk. Waller opened the door and came out "immediately." Both deputies noticed a burning smell coming from the room.

Waller and the deputies went outside. Waller stood next to Deputy VandenBos' patrol car. Deputy VandenBos asked Waller if he could do a pat-down search for weapons. Waller agreed.

Deputy VandenBos asked how Waller was doing. Waller admitted he had been smoking synthetic marijuana. Initially, Waller's responses to Deputy VandenBos' questions were slow and slurred. But as the conversation went on, Waller became more coherent.

Deputy VandenBos told Waller that his mother called 911 because she was concerned he had a gun. Waller admitted he had a gun under his bed. Deputy VandenBos read Waller his Ferrier[2] rights. Deputy VandenBos explained that Waller

---

[2] State v. Ferrier, 136 Wn.2d 103, 960 P.2d 927 (1998).

2

could refuse to consent to a search of his bedroom, could revoke consent to the search at any time, or could limit the scope of the search. Waller "nodded and said he understood." Deputy VandenBos and Waller went back inside the house. Before entering the bedroom, Deputy VandenBos read Waller his Ferrier rights a second time. Waller said, " 'Uh-huh,' and nodded his head that he understood." Waller stood inside the bedroom near Deputy VandenBos and "did not object to or limit the search in any way."[3] Deputy VandenBos looked under the bed and found a hard plastic case containing a semiautomatic handgun.

Deputy VandenBos placed Waller under arrest and read Waller his Miranda[4] rights. Deputy VandenBos asked if Waller understood. Waller nodded that he understood his Miranda rights. Deputy VandenBos asked if Waller knew that he was not permitted to have a firearm. Waller "nodded that he knew he was not supposed to." Deputy VandenBos asked Waller if he needed to go to the hospital. Waller said that he would " 'rather not.' " Deputy VandenBos described Waller as "very cooperative and relaxed the whole time."

On July 8, 2016, the State charged Waller with one count of unlawful possession of a firearm in the second degree "[o]n or about the day of July 5, 2016." The State later filed an amended information to allege unlawful possession of a firearm in the second degree "on or about the 19th day of June, 2016 and to the 5th day of July, 2016."[5]

Waller filed a motion to suppress the firearm seized during the search of his bedroom and the acknowledgment that he knew he was not permitted to possess a gun.

---

[3] Emphasis omitted.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[5] Italics omitted.

3

Waller argued that he was incapable of consenting to the search or voluntarily waiving his Miranda rights.

Deputy VandenBos and Deputy Jilk were the only witnesses who testified at the CrR 3.5 and CrR 3.6 hearing. The trial court ruled Waller freely, knowingly, intelligently, and voluntarily agreed to the search of his bedroom and waived his Miranda rights and entered written findings of fact and conclusions of law.

The defense at trial was that "the court at the time of conviction did not notify Mr. Waller orally and in writing that he could not possession [sic] firearms as required by RCW 9.41.047." The State called a number of witnesses to testify, including Doherty, the Whatcom County deputies, Waller's uncle, and the Whatcom County Superior Court Chief Deputy Clerk.

Doherty testified that Waller's father gave him the gun approximately eight months to a year before she called 911 on July 5, 2016. Waller's uncle Robert Facincani testified that he discovered the gun under a couch cushion on approximately June 19, 2016. When he picked up the gun, Waller walked over and grabbed the gun out of Facincani's hand.

The court admitted into evidence certified copies of a 2003 information charging Waller as a juvenile with felony drug possession with intent to deliver, the statement of defendant on plea of guilty, and the adjudication and disposition. The statement of Waller on plea of guilty states he gives up the right to possess a firearm.

Whatcom County Superior Court Chief Deputy Clerk Sandra Kiele testified that Waller was convicted as a juvenile of a felony in 2003. Kiele testified Waller signed the

4

statement of defendant on plea of guilty and the order on adjudication and disposition that state he is prohibited from possessing a firearm.

Waller testified that he did not remember being convicted of a felony or being informed he could not possess a firearm. Waller admitted, "[I]t appears to be my signature" on the statement of defendant on plea of guilty and adjudication and disposition.

The trial court instructed the jury to convict Waller of unlawful possession of a firearm in the second degree, the State had to prove beyond a reasonable doubt that "on or about and/or between June 19, 2016 and July 5, 2016," Waller "knowingly had a firearm in his possession or control" and had been previously adjudicated of a felony. The jury instructions define "possession" as "either actual or constructive."

In closing argument, the deputy prosecutor argued the jury could find Waller guilty of actual and constructive possession of a firearm between June 19 and July 5, 2016.

> Possession, there's really two types of possession in this case, and there's two types of possession under the law, and the judge read you an instruction to that effect. There's actual, and there's constructive possession, and you can see we broadened the date range in terms of the charge to capture that incident that occurred with the uncle, Uncle Robert on June 19, remember he testified, and then also, the Defendant's mother, Ms. Doherty testified the Defendant pulled a firearm out of Robert's hand, took it away from him. Robert thought better of wrestling with a young man over a firearm. He relented. The Defendant took it back to his room. That was witnessed and observed by two different witnesses. That's actual possession. In other words, he's actually taking custody and control over the item like I am this pen.
> The difference between that and constructive possession, and that's really what we have evidence for when the police intervened on July 5, 2016, is you're not in actual physical custody of the item if you have constructive possession, but you have dominion and control over the item, and the judge read you an instruction how you determine whether or not someone has dominion and control. The Defendant had dominion and

control. He was exercising dominion and control over the firearm on July 5, 2016, because it was in his room, and because it was under his bed.

The jury found Waller guilty.

## ANALYSIS

Waller appeals his conviction of unlawful possession of a firearm in the second degree. Waller contends the trial court erred in denying his motion to suppress the firearm and the custodial statement to police that he knew he was not permitted to possess a firearm. Waller also claims he was denied his constitutional right to a unanimous jury.

Consent to Search

Waller argues the trial court erred in denying his motion to suppress the firearm seized from his bedroom. Waller contends the search of his bedroom was unlawful because he lacked the capacity to consent to the search.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures. State v. Day, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007). As a general rule, a warrantless seizure is per se unreasonable absent an exception to the warrant requirement. Day, 161 Wn.2d at 893-94. Consent is an exception to the warrant requirement. State v. Hendrickson, 129 Wn.2d 61, 71, 917 P.2d 563 (1996). The State bears the burden of proving by clear, cogent, and convincing evidence the applicability of a recognized exception. State v. Garvin, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009).

For consent to be valid, a person must consent freely and voluntarily. State v. O'Neill, 148 Wn.2d 564, 588, 62 P.3d 489 (2003). Whether the consent was voluntary is a question of fact to be determined based on the totality of the circumstances.

O'Neill, 148 Wn.2d at 588 (citing State v. Bustamante-Davila, 138 Wn.2d 964, 981, 983 P.2d 590 (1999)). "[T]he mere fact that one has taken drugs does not render consent to search involuntary." State v. Sondergaard, 86 Wn. App. 656, 664 n.23, 938 P.2d 351 (1997) (citing United States v. Rambo, 789 F.2d 1289 (8th Cir. 1986)).

We review a trial court's decision on a motion to suppress to determine whether substantial evidence supports the findings and whether those findings in turn support the conclusions of law. O'Neill, 148 Wn.2d at 571. We defer to the trier of fact on " 'issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.' " State v. Andy, 182 Wn.2d 294, 303, 340 P.3d 840 (2014) (quoting State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). We treat unchallenged findings of fact as verities on appeal. O'Neill, 148 Wn.2d at 571. We review a trial court's conclusions of law de novo. State v. Johnson, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

Waller challenges the following findings of fact:

5. Once outside, the Defendant appeared to be more coherent.
6. Prior to requesting consent to search the bedroom for the firearm, Deputy VandenBos advised the Defendant of his Ferrier warnings, to which the Defendant affirmatively expressed his understanding. According to both Deputies, the Defendant acknowledged that he was aware of his right to refuse the search of his bedroom, and freely granted consent, and described exactly where the Deputies could find the firearm.
7. During the Ferrier warning regarding limiting the search, the Defendant laughed and verbalized understanding, after Deputy VandenBos joked about not exceeding the scope of the search to find a stash of pornography.
8. Before entering the bedroom to conduct the search Deputy VandenBos repeated the Ferrier warnings. The Defendant affirmatively acknowledged that that [sic] he understood his Ferrier rights and waived his right to refuse consent to search.

The uncontroverted testimony at the CrR 3.5 and CrR 3.6 hearing supports the findings of fact. Deputy VandenBos testified that Waller was "obviously under the influence of something." Deputy VandenBos testified that when he began speaking to Waller, Waller appeared "spaced out" but able to understand and respond appropriately. Deputy VandenBos testified Waller "appeared to understand what I was saying and respond to that, but it was just delayed by sometimes up to 30 seconds where he would kind of look at me and kind of formulate a response." But as the conversation continued, Deputy VandenBos testified that Waller "seemed to clear up and be able to speak to me."

Deputy VandenBos said that when he read the Ferrier warnings, he told Waller, "[S]o, you know, if there's, you know, something that you don't want us to see like pornography stashed somewhere, you can tell me not to search there." Waller laughed and replied, "[E]verybody has a pornography stash." Deputy VandenBos testified Waller's reaction "indicated that he kind of knew what he was talking about, and had the wherewithal to detect my sarcasm and reciprocate." In describing how Waller responded to the warnings, Deputy VandenBos testified, "He advised me he understood. I believe in that case, he nodded and said he understood."

Deputy VandenBos testified that before entering the bedroom, he read Waller Ferrier rights a second time "just to confirm that he did fully understood what he was doing."

> I went through the rights again and explained the three different prongs of the Ferrier warnings and asked him if he understood, and to the best of my memory, he said, "Uh-huh," and nodded his head that he understood.

The unchallenged findings establish that "[d]uring the search, the Defendant stood near Deputy VandenBos and the Defendant did not object to or limit the search in any way."[6] Substantial evidence supports the trial court's conclusion that Waller knowingly, intelligently, and freely consented to the search of his bedroom.

In support of his argument that he lacked the capacity to consent to the search, Waller relies on Sondergaard. Sondergaard is distinguishable.

In Sondergaard, a police officer responded to a 911 call regarding the defendant Sondergaard's irrational behavior. Sondergaard, 86 Wn. App. at 657. The officer "observed Sondergaard sitting in a dark room, fidgeting, rocking back and forth, and occasionally pointing at nothing in particular." Sondergaard, 86 Wn. App. at 658. The officer spoke with Sondergaard for a few minutes and Sondergaard "nonsensically mentioned that a soda can was moving." Sondergaard, 86 Wn. App. at 658. When the officer asked if he could look in her purse, Sondergaard agreed. The officer found narcotics in the purse. Sondergaard, 86 Wn. App. at 658. Concerned about her physiological condition, the officer transported Sondergaard to the hospital. By the time they reached the hospital, Sondergaard began to " 'really rave' " and yelled that the officer "was letting his wife be killed by the falling ceiling tiles." Sondergaard, 86 Wn. App. at 658. We affirmed the trial court finding that Sondergaard lacked the ability to voluntarily consent to a search because " 'she sees things moving that aren't moving' " and was " 'in a hallucinatory state.' " Sondergaard, 86 Wn. App. at 659. Here, unlike in Sondergaard, there is no evidence Waller exhibited signs of mental illness and it is

---

[6] Emphasis in original.

undisputed Waller was responsive and coherent after he went outside with the deputies. The trial court did not err in denying Waller's motion to suppress the firearm.

Waiver of Miranda Rights

Waller contends the trial court erred in denying his motion to suppress the statement he made to police that he knew he was not allowed to possess a firearm because he lacked the capacity to waive his Miranda rights.

A confession is voluntary and therefore admissible if made after the defendant has been advised of his Miranda rights and knowingly, voluntarily, and intelligently waives those rights. State v. Aten, 130 Wn.2d 640, 663, 927 P.2d 210 (1996). The test for voluntariness is whether the defendant made a free and unconstrained choice to make the confession. State v. Thompson, 73 Wn. App. 122, 131, 867 P.2d 691 (1994). The court considers the totality of the circumstances to determine voluntariness, including the defendant's physical condition, age, mental abilities, and experience and the conduct of the police. Aten, 130 Wn.2d at 663-64.

Like other factors, intoxication is relevant but does not necessarily render a confession involuntary. State v. Turner, 31 Wn. App. 843, 845-46, 644 P.2d 1224 (1982); see also State v. Smith, 15 Wn. App. 103, 107, 547 P.2d 299 (1976) ("Intoxication alone does not, as a matter of law, render a confession involuntary and inadmissible."). When a defendant claims that he confessed while intoxicated, a court may still admit a confession that was the product of "a rational intellect and free will." State v. Gregory, 79 Wn.2d 637, 642, 488 P.2d 757 (1971), overruled on other grounds by State v. Rogers, 83 Wn.2d 553, 520 P.2d 159 (1974).

10

Waller challenges finding of fact 10:

After securing the firearm, Deputy VandenBos placed the Defendant in handcuffs and advised the Defendant of his Miranda rights. The Defendant affirmatively acknowledged that he understood his rights, and he waived his Miranda rights, and he agreed to speak with Deputy VandenBos. In response to post-Miranda questioning by Deputy VandenBos, the Defendant admitted to knowing that he was forbidden from possessing firearms by nodding his head in the affirmative.

Substantial evidence supports the finding. Deputy VandenBos testified that when he read Waller Miranda warnings, Waller was coherent and responsive and at no time displayed confusion about what was happening. In addition, Waller does not challenge the finding that the deputies "maintained a conversational tone" with Waller, that Waller "was cooperative with the officers during the contact," and that the deputies "did not make any threats or promises or attempt to coerce" Waller. Here, the totality of the circumstances supports the finding that Waller voluntarily waived his Miranda rights. The trial court did not err in denying Waller's motion to suppress his custodial statement that he knew he was not permitted to possess a gun.

Jury Unanimity

For the first time on appeal, Waller argues he was denied his right to a unanimous verdict because the trial court did not give a unanimity instruction. A party may raise for the first time on appeal a manifest error affecting a constitutional right. RAP 2.5(a)(3); see also State v. Walsh, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). The failure to provide a unanimity instruction where required is a manifest constitutional error that a party may raise for the first time on appeal. State v. Lamar, 180 Wn.2d 576, 586, 327 P.3d 46 (2014).

11

Waller contends a unanimity instruction was required because the State relied on two distinct acts of unlawful possession of a firearm. The State argues a unanimity instruction was not necessary because the evidence showed an ongoing course of conduct. We agree with the State.

A defendant has a right to a unanimous jury verdict under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. State v. Fisher, 165 Wn.2d 727, 755, 202 P.3d 937 (2009) (citing State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)).

When the State presents evidence of several acts that could constitute the charged crime, the jury must agree unanimously on which act constituted the charged crime. Kitchen, 110 Wn.2d at 411. Either the State must elect the act on which it relies or the court must instruct the jury to agree unanimously as to what act or acts the State proved beyond a reasonable doubt. Kitchen, 110 Wn.2d at 411; see also State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). But this rule does not apply when the State presents evidence of multiple acts that are a " 'continuing course of conduct.' " State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989) (quoting Petrich, 101 Wn.2d at 571). To determine whether criminal conduct constitutes one continuing act, the trial court must evaluate the facts in a commonsense manner. Handran, 113 Wn.2d at 17. A reviewing court will consider "(1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose." State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010).

To convict Waller of unlawful possession of a firearm in the second degree as charged, the jury had to find beyond a reasonable doubt that between June 19, 2016

and July 5, 2016, Waller knowingly had a firearm in his possession or control and was convicted previously of a felony offense. RCW 9.41.040(2)(a)(i).

Possession of a firearm may be actual or constructive. State v. Echeverria, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). Actual possession occurs when the firearm is in the actual physical custody of the person charged. State v. Manion, 173 Wn. App. 610, 634, 295 P.3d 270 (2013). Constructive possession occurs when the person charged does not have physical possession of the firearm but instead has dominion and control over the firearm. Manion, 173 Wn. App. at 634. Here, the prosecutor relied on both actual and constructive possession to prove Waller possessed a firearm between June 19 and July 5, 2016. The prosecutor argued Waller actually possessed the firearm on June 19 when he took the gun away from his uncle and constructively possessed the firearm on July 5 when police found the firearm under his bed. There was no evidence to suggest Waller's possession was interrupted between June 19 and July 5.

The uncontroverted evidence established Waller was in actual possession of the firearm on June 19 and constructive possession of the firearm on July 5. Doherty testified Waller's father gave Waller a gun. Both Waller's mother and uncle testified that on June 19, Facincani found the gun in Doherty's couch and Waller grabbed it away and took possession of the gun. On July 5, Deputy VandenBos found the gun underneath Waller's bed. Only Waller lived in the bedroom and had control over the

gun. Because the evidence shows a continuing course of conduct, Waller was not entitled to a unanimity instruction.[7]

Statement of Additional Grounds

Waller makes several claims in a pro se statement of additional grounds. Waller contends Doherty was an unreliable witness because she had previously suffered a stroke. Doherty testified about the stroke and the effect on her memory. Credibility determinations by the jury will not be disturbed on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Waller challenges the sufficiency of the evidence supporting the conviction. Waller contends the State did not prove the gun was a "firearm" as defined by RCW 9.41.010(10). Evidence is sufficient to support a conviction if when viewed in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Both Deputy VandenBos and Deputy Jilk identified the gun found under Waller's bed as a .38 caliber Lorcin semiautomatic handgun. Detective John Allgire testified that he test-fired the gun and it was operational. Sufficient evidence supports the conviction.

Waller contends his attorney provided ineffective assistance of counsel. To establish ineffective assistance of counsel, Waller must demonstrate both (1) his attorney's representation was deficient, i.e., it fell below an objective standard of reasonableness; and (2) resulting prejudice, i.e., a reasonable probability that but for

---

[7] Here, unlike in State v. Shouse, 119 Wn. App. 793, 797, 83 P.3d 453 (2004), and State v. Coleman, 159 Wn.2d 509, 512, 515, 150 P.3d 1126 (2007), a rational trier of fact could find each incident was proved beyond a reasonable doubt.

counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Waller asserts the gun Facincani found in the couch was a paintball gun and argues defense counsel failed to adequately cross-examine Facincani about his ability to identify the gun as a firearm. But Doherty testified that she was present when Facincani found the gun on June 19. Doherty identified the gun as the same handgun Waller's father gave him. Waller cannot show ineffective assistance of counsel.

Waller also asserts his attorney provided ineffective assistance when the attorney (1) failed to make objections, (2) failed to propose a lesser included instruction, and (3) "shushed" Waller when he attempted to make his own objections during the trial. Waller also claims the trial court erred in giving an unconstitutional jury instruction and defense counsel was ineffective for failing to object or propose a lesser included instruction. Waller's conclusory assertions do not permit appellate review. RAP 10.10(c).

Waller argues the prosecutor committed misconduct during closing argument by misstating evidence. But where, as here, the defense does not object or request a curative instruction, any error is waived unless the conduct is " 'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice' " that could not have been neutralized by a curative instruction to the jury. Fisher, 165 Wn.2d at 747[8] (quoting State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006), overruled on other grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014)).

---

[8] Internal quotation marks omitted.

Waller's other arguments rely on matters outside the record and cannot be addressed on direct appeal.  See McFarland, 127 Wn.2d at 337-38.

We affirm the jury conviction of unlawful possession of a firearm in the second degree.

WE CONCUR: