IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WILLIAM BRADLEY WILLARD, JR., a single man, Corazon Johnson, a single woman, and COBRA REAL ESTATE, LLC, a Washington Limited Liability Company, | ) ) ) ) ) | No. 35861-5-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BENJAMIN ADDINK and JADA ADDINK, husband and wife and the marital community composed thereof; HEAVENLY ROCK PFF, a Private Fund Foundation established in the Netherlands Antilles; WHITESTONE LAND MANAGEMENT, LLC, a Washington Limited Liability Company; JOE HORGAN, individually and d/b/a ASSIST 2 SELL HOME REALTY; STANLEY ADDINK and SHARON ADDINK, husband and wife and the marital community composed therefore; THOMAS LILLY and NANCY LILLY, husband and wife and the marital community composed thereof, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents, | ) | |
| | ) | |

No. 35861-5-III
*Willard v. Addink*


KEVIN HILDEBRANDT and "Jane Doe"  )
HILDEBRANDT and the marital        )
community,                         )
                                   )
                    Defendants.    )

LAWRENCE-BERREY, C.J. — William Willard, Corazon Johnson, and Cobra Real

Estate, LLC, appeal the trial court's summary judgment order dismissing their claims

against respondents, and the trial court's order awarding respondents their reasonable

attorney fees of $25,000. Respondents, without cross-appealing or assigning error, argue

the trial court erred by not awarding them costs. We affirm the challenged trial court

orders.

## FACTS

William Willard and Stanley Addink[1] had been friends for years. Willard and

Stanley worked together on various construction projects. One of the projects was the

Willard's of Saba Hotel (the Hotel), which is located on the Caribbean Island of Saba.

Willard had operated the Hotel since its construction.

In the spring of 2009, Willard mentioned to Stanley that he had listed the Hotel for

sale. Stanley said that Benjamin, his son, was developing properties in eastern

---

[1] To avoid confusion, we refer to Stanley Addink and Benjamin Addink by their first names.

2

Washington, and Willard should speak with him. Willard and Benjamin began discussing

a possible trade of the Hotel for some lots Benjamin was developing near Lake Roosevelt.

On June 3, 2009, Willard traveled from Saba to eastern Washington to look at the

lots. Four of the lots were located in Ridgeview Estates development (Ridgeview

Estates), and one lot was located in Enterprise Ridge development (Enterprise Ridge).

The Enterprise Ridge lot Benjamin showed to Willard was a 20 acre lot, mostly flat, with

a view of Lake Roosevelt.

Willard returned to Saba, and negotiations commenced by e-mail. Willard said he

had listed the Hotel for $3.4 million, and asked for the trade value of Benjamin's

properties to be around that amount.

By July 2009, Benjamin had identified the eastern Washington properties he

wished to trade. Benjamin employed a realtor to provide Willard an estimated value of

the various lots. The realtor estimated the combined value of the four Ridgeview Estate

lots as between $600,000 and $1,200,000. The realtor identified the Enterprise Ridge lot

by parcel number, and estimated its value as between $150,000 and $300,000.

Both sides made representations to the other about the values of their properties.

But neither was comfortable with the other relying on their expressions of value. By

e-mail of July 25, 2009, Willard wrote to Benjamin: "We agree with your 'Standard

3

Disclosure' essentially 'Caveat Emporus' [sic], I believe, or buyer beware." Clerk's
Paper (CP) at 108.

In August 2009, Benjamin traveled from eastern Washington to Saba to look at the
Hotel. The Hotel, comprised of nine units, needed significant work and Willard had been
losing money on it since it opened. The Hotel had survived 11 hurricanes in 16 years,
including 4 major hurricanes. No insurer would insure the Hotel.

On September 4, 2009, the parties executed the Real Estate Trade Agreement
(Agreement). The Agreement was mutually prepared by Willard's attorney and
Benjamin's attorney. Essentially, Willard traded the Hotel for three of Benjamin's
Ridgeview Estates lots, an option to acquire a fourth lot, and the 20-acre lot in Enterprise
Ridge. The legal description of the 20-acre lot was set forth in Exhibit E of the
Agreement. In addition, Benjamin agreed to "help facilitate packing and arranging for
the shipping of [Willard's] personal property" located at the Hotel and described in
Exhibit B of the Agreement. CP at 50-51.

Consistent with Willard's July 25, 2009 e-mail, the parties included a due
diligence clause. The clause recited that each "had adequate time and opportunity to
conduct a due diligence inquiry with respect to [the traded properties] . . . [and had]
independently formed an opinion regarding the value of the [traded properties]."

4

CP at 52. Similarly, the parties included an integration clause. The clause recited that the Agreement "contains the entire agreement between the parties . . . and fully supersedes all prior written or oral agreements and understandings between the parties . . . ." CP at 58.

The sale of the 20-acre lot closed on September 8, 2009. The statutory warranty deed contained the same metes and bounds legal description as the description contained in the Agreement. The metes and bounds description was for the same lot Benjamin's realtor had earlier provided a value estimate.

In November 2009, Benjamin's in-laws assisted in shipping Willard's personal property items Willard had left at the Hotel. Almost two years later, Willard notified Benjamin that some of the shipped items were damaged. He later claimed that some of the items specified in the Agreement were not even shipped.

On May 28, 2012, Willard traveled to eastern Washington to visit the 20-acre lot he had purchased. He learned that the lot was a sloped rocky lot, not the nearby flat lot he had been shown by Benjamin.

PROCEDURE

On December 21, 2012, Willard, Johnson, and Cobra Real Estate (Willard) filed this lawsuit against Benjamin, his in-laws, his father, and his realtor (Benjamin). Willard sought damages for two losses. The first loss related to the difference in value between

5

the flat 20-acre lot he claimed he was shown and the sloped, rocky 20-acre lot conveyed to him. The causes of action related to the first loss were fraud and misrepresentation.

The second loss related to his damaged and missing personal property. The causes of action related to the second loss were breach of contract and conversion. Benjamin filed an answer and denied the allegations. He later filed a motion for summary judgment.

With respect to the fraud and misrepresentation claims, Benjamin argued that Willard's claims were barred by the statute of limitations and that the Agreement did not permit him to reasonably rely on Benjamin's purported representations about the 20-acre lot. In response, Willard asserted that the discovery rule tolled the statute of limitations until May 28, 2012, and that he was entitled to rely on Benjamin's representations.

With respect to the breach of contract and conversion claims, Benjamin argued that the language in the Agreement requiring him to "help facilitate" Willard was too vague to support Willard's causes of action. Willard responded that the language in the Agreement required Benjamin to ensure that all personal property items were received by Willard in good condition.

The trial court determined that the legal description in the recorded statutory warranty deed put Willard on inquiry notice that he had actually purchased the sloped

rocky lot. The trial court concluded that the three-year statute of limitations on the fraud

and misrepresentation claims accrued on September 8, 2009, and expired prior to

December 2012, when Willard filed his lawsuit. The trial court also determined that the

language in the Agreement that required Benjamin to help facilitate Willard in the

shipping of his personal property was too vague to support Willard's causes of action.

Benjamin then requested an award of attorney fees and costs. The trial court noted

that much of the fees and costs related to general discovery, which was not necessary

based on its narrow reasons for dismissing Willard's lawsuit. The trial court awarded

Benjamin and his family $25,000 in attorney fees and nothing in court costs.

Willard timely appealed.

## ANALYSIS

"'On appeal of summary judgment, the standard of review is de novo, and the

appellate court performs the same inquiry as the trial court.'" *Martin v. Gonzaga Univ.*,

191 Wn.2d 712, 722, 425 P.3d 837 (2018) (quoting *Lybbert v. Grant County*, 141 Wn.2d

29, 34, 1 P.3d 1124 (2000)). Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact

determines the outcome of the litigation in whole or in part. *RockRock Group, LLC v. Value Logic, LLC*, 194 Wn. App. 904, 913, 380 P.3d 545 (2016). All reasonable inferences and facts are viewed in the light most favorable to the nonmoving party. *Id.*

A.     THE FRAUD AND MISREPRESENTATION CLAIMS FAIL BECAUSE WILLARD HAD NO RIGHT TO RELY ON BENJAMIN'S PRE-CONTRACT REPRESENTATIONS

Willard argues he could not have discovered that Benjamin sold him the wrong lot until May 28, 2012, when he first viewed it after the purchase. He argues the trial court erred in not applying the discovery rule so as to toll the three-year statute of limitations until that time. We believe whether Willard should have known he purchased the wrong lot more than three years before he commenced his lawsuit is a question of fact.

Claims of fraud and misrepresentation must be filed within three years of when a cause of action accrues. RCW 4.16.080(4); *First Maryland Leasecorp v. Rothstein*, 72 Wn. App. 278, 286, 864 P.2d 17 (1993). Generally, a cause of action accrues when a party has the right to apply to court for relief. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006). Often, an action accrues immediately when the wrongful act occurs, but if the plaintiff is unaware they have been harmed, a literal application of the statute of limitations could result in grave injustice. *Id.* To avoid this injustice, courts apply the discovery rule. *Id.* Under this rule, a cause of action accrues

8

when the plaintiff discovers, or in the reasonable exercise of diligence *should* discover, the salient facts underlying the elements of the cause of action. *Id.* at 575-76.

The question thus becomes when *should have* Willard discovered that he purchased the sloped rocky lot instead of the flat lot. The parties discuss and the trial court relied on *Shepard v. Holmes*, 185 Wn. App. 730, 345 P.3d 786 (2014). There, Holmes sold lots 1, 2, 3, and 4 to Shepard. *Id.* at 734. At the time, Shepard believed the lots could be sold individually. *Id.* In 2011, Shepard decided to sell two of the lots. *Id.* She learned from the planning department that in 1998, the owner of the lots recorded a "Deed of Consolidation" that consolidated the lots into one parcel. *Id.* She also learned that the county's density requirements had since changed and that she could not re-divide the former lots and sell them separately. *Id.* Shepard sued Holmes (and others) and alleged theories including misrepresentation and bad faith. *Id.* at 735. The trial court determined that the discovery rule did not toll Shepard's claims because the recorded Deed of Consolidation was a public record and thus was easily ascertainable. *Id.* at 736. In affirming, we wrote, "[W]here facts constituting fraudulent acts were matters of public record, and thus 'easily ascertainable,' the public record serves as 'constructive notice to all the world of its contents.'" *Id.* at 740 (quoting *Davis v. Rogers*, 128 Wash. 231, 236, 222 P. 499 (1924)).

*Shepard* is not helpful to our analysis. Here, Willard was twice provided the correct legal description of the 20-acre lot he purchased. Willard did not need to resort to the public record. With the correct legal description, he had information available to him so he *could have* determined what he had purchased. But to have known what he had purchased, he would have had to hire a surveyor familiar with metes and bounds descriptions to locate the property and then send pictures to him. Whether Willard *should have* hired a surveyor and had pictures sent to him is not susceptible to summary judgment determination.

We may affirm a trial court's summary judgment on any basis properly presented and developed before the trial court. *State v. Sondergaard*, 86 Wn. App. 656, 657-58, 938 P.2d 351 (1997). The parties argued below and on appeal the question of whether the Agreement precluded Willard from relying on Benjamin's purported pre-contract representations. We, therefore, consider this argument as a basis whether to affirm the trial court.

The Agreement was a commercial, not a consumer transaction. The parties are relatively sophisticated business people. While negotiations were underway, they agreed "buyer beware." They hired attorneys to draft the Agreement. By virtue of the due diligence clause and the integration clause, it appears both parties wanted to protect

themselves from claims of misrepresentation. The due diligence clause stated that both

parties independently formed their own opinions about value and were relying on their

own due diligence. The integration clause stated that the Agreement contained "the entire

agreement between the parties" and "fully supersede[d] all prior written or oral

agreements and understandings between the parties." CP at 58.

Willard does not seek to invalidate these clauses.[2] Rather, he argues that these

clauses did not waive his right to sue for fraud or misrepresentation. We disagree.

To prove fraud, Willard must prove he had a right to rely on Benjamin's pre-

contract statements. *Alejandre v. Bull*, 159 Wn.2d 674, 690, 153 P.3d 864 (2007).

Similarly, to prove negligent misrepresentation, Willard must prove he justifiably relied

on Benjamin's pre-contract statements. *Schaaf v. Highfield*, 127 Wn.2d 17, 22, 896 P.2d

665 (1995). But both the due diligence clause and the integration clause explicitly

prevent Willard from relying on Benjamin's pre-contract statements. We, therefore,

conclude that Willard cannot establish he had a right to rely on Benjamin's pre-contract

representations, and the trial court properly dismissed those claims on summary judgment.

---

[2] Given that Willard and Benjamin intentionally included these two clauses in the Agreement, we doubt Willard would have been successful had he attempted to invalidate either of them. *See Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222-26, 797 P.2d 477 (1990) (A party to a commercial transaction seeking to invalidate a contractual clause must establish unfair surprise.).

B. BENJAMIN'S PROMISE TO "HELP FACILITATE PACKING AND ARRANGING FOR THE SHIPPING" OF WILLARD'S PERSONAL PROPERTY IS TOO VAGUE TO ENFORCE

Willard argues the trial court erred in dismissing his breach of contract and conversion claims. Benjamin responds that the language Willard sought to enforce is too vague to create a binding obligation. We agree with Benjamin.

"A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." RESTATEMENT (SECOND) OF CONTRACTS § 2(1) (1981). "To be valid, a promise must set forth an express undertaking that is both specific in purpose and measureable by a definable result. A promise is considered illusory if it is so indefinite that it cannot be enforced . . . . An illusory promise creates no obligation on the promisor." 25 David K. DeWolf, Keller W. Allen & Darlene Barrier Caruso, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 1:2, at 7-8 (3d ed. 2014).

"An enforceable contract requires, among other things, an offer with reasonably certain terms." *Andrus v. Dep't of Transp.*, 128 Wn. App. 895, 898, 117 P.3d 1152 (2005) (emphasis omitted). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981). "[I]f a term is so

12

'indefinite that a court cannot decide just what it means, and fix exactly the legal liability of the parties,' there cannot be an enforceable agreement." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178, 94 P.3d 945 (2004) (quoting *Sandeman v. Sayres*, 50 Wn.2d 539, 541, 314 P.2d 428 (1957)).

The Agreement provides, Benjamin "will help facilitate packing and arranging for the shipping of [Willard's] personal property." CP at 50-51. "Help facilitate" can mean as little as allowing Willard access to the Hotel. This language does not impose a specific duty or provide a basis for determining a breach. It is so indefinite that we cannot determine where legal liability begins and where it ends. We conclude the language does not provide Willard any enforceable rights. *See Keystone*, 152 Wn.2d at 178.

C.  ATTORNEY FEES AND COSTS

1.  *No error in awarding attorney fees to Benjamin*

Willard argues the trial court erred by awarding attorney fees to Benjamin. We disagree.

Whether a contract provision authorizes an award of fees is reviewed de novo. *In re Marriage of Wixom*, 190 Wn. App. 719, 724, 360 P.3d 960 (2015); *Sanders v. State*, 169 Wn.2d 827, 866, 240 P.3d 120 (2010). But we review the *amount* awarded for an abuse of discretion. *Morgan v. Kingen*, 166 Wn.2d 526, 539, 210 P.3d 995 (2009). "An

13

abuse of discretion occurs only when the decision of the court is 'manifestly

unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v.*

*McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v.*

*Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Attorney fees may be awarded when authorized by a statute, private agreement, or

a recognized ground in equity. *Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wn.

App. 229, 277, 215 P.3d 990 (2009). "[T]he analysis usually is straightforward: the

relevant statute or contract either provides for an award of fees or it does not." *Tradewell*

*Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). The Agreement

expressly provides:

> Attorney Fees: Should any Party hereto engage an attorney to enforce any
> rights hereunder, the prevailing Party shall, in addition to all other rights, be
> entitled to recover its attorney fees, costs and disbursements, including fees
> of experts, before, during and at trial, and on appeal if any.

CP at 58.

Willard argues attorney fees were inappropriate because he did not engage an

attorney to enforce the Agreement. Willard is wrong for two reasons. First, he did

engage an attorney to enforce the Agreement insofar as the Agreement required Benjamin

to help facilitate the shipping of Willard's personal property. Second, the Agreement

permits an award of fees if "any Party" engages an attorney to enforce any rights

14

thereunder. Benjamin engaged an attorney to enforce the due diligence clause and the integration clause. We conclude the trial court did not err in awarding Benjamin attorney fees under the Agreement.

### 2. *No error in declining cost award to Benjamin*

Benjamin argues the trial court erred by failing to award him costs in accordance with the Agreement. If a party clearly raises a claim of error in its brief, we may review it even though the party did not specifically assign error. *Hadley v. Maxwell*, 144 Wn.2d 306, 311 n.1, 27 P.3d 600 (2001).

RCW 4.84.330 provides in part:

> In any action on a contract or lease . . . where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party . . . shall be entitled to *reasonable* attorneys' fees in addition to costs and necessary disbursements.

(Emphasis added.) Therefore, even where a contractual attorney fee clause does not explicitly limit an award of fees or costs to "reasonable" fees or costs, RCW 4.84.330 requires such a limitation. Here, the trial court declined to award any deposition costs because it determined those costs were unnecessary to its summary judgment disposition. Benjamin does not explain how the trial court erred in this determination. We find no abuse of discretion.

15

No. 35861-5-III
*Willard v. Addink*

> 3.    *Benjamin is entitled to his reasonable attorney fees and costs on appeal*

Benjamin requests an award of attorney fees and costs on appeal. Benjamin is entitled to reasonable attorney fees and costs on appeal in accordance with the Agreement. Subject to Benjamin's compliance with RAP 18.1(d), we award him his reasonable attorney fees and costs on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

16